454 N.W.2d 876 (1990)
In the Matter of Property Seized from Dickey D. KASTER.
Appeal of STATE of Iowa.
No. 89-40.
Supreme Court of Iowa.
April 18, 1990.
As Corrected May 18, 1990.
*877 Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., Paul L. Martin, County Atty., and Michael J. Houchins, Asst. County Atty., for appellant.
Kyndra Naeve of Brown, Kinsey & Funkhouser, Mason City, for Kaster.
Randall C. Wilson and Patricia M. Hulting, Des Moines, for amicus curiae, Iowa Civ. Liberties Union.
Considered en banc.
ANDREASEN, Justice.
The sole issue raised in this appeal is whether Iowa Code section 809.1(2)(b) (1987) is unconstitutionally vague. After trial and the submission of written briefs and arguments, the district court concluded the statute was unconstitutionally vague and ordered the return of property which the State sought to forfeit. We conclude otherwise, and we reverse and remand to the district court.
Dickey D. Kaster was charged with three counts of violating Iowa Code section 109.-32, which, among other things, makes it a simple misdemeanor to catch fish with a net. Kaster has a commercial fish hatchery license and operates both a hatchery and a bait shop. Kaster was stopped as he was leaving Clear Lake the night of April 3, 1988, by Officer Schutte of the Department of Natural Resources. Schutte found a wet gill net[1] in the back of Kaster's pickup truck, and he also found three fish[2] and other equipment[3] commonly used in gill netting in the boat Kaster had just removed from the lake and loaded onto a boat trailer.
The county attorney filed a notice of forfeiture claiming Kaster's boat, outboard motor, gill net, boat trailer, depth finder, trolling motor, gloves, plastic milk jug, fence post, and three fish were forfeitable property. See Iowa Code § 809.8 (only the county attorney or attorney general may seek forfeiture). The State sought forfeiture because it considered Kaster intentionally violated the law for commercial purposes. Kaster made application for the return of all the items except the three fish. See Iowa Code § 809.9 (claim for return of forfeitable property).
"Forfeitable property" is defined by Iowa Code section 809.1(2) to include, among other things:

b. Property which has been used or is intended to be used to facilitate the commission of a criminal offense or to avoid detection or apprehension of a person committing a criminal offense.
The district court concluded this statute did not give a person of ordinary intelligence fair warning of what property was at risk and did not provide explicit standards for those who enforce it. Having determined the statute was unconstitutionally vague, the district court sustained Kaster's application for return of the property. The State appealed and Kaster cross-appealed.
I. Standard of Review.
We review the district court's ruling and order for errors of law. Although forfeiture statutes are not criminal statutes, they are penal in nature and must be strictly construed. State v. One Certain 1969 Ford Van, 191 N.W.2d 662, 666 (Iowa 1971). We also construe forfeiture statutes with a view to promote their legitimate purposes. State v. Ludtke, 446 N.W.2d 797, 798 (Iowa 1989). The principles *878 which apply upon review of vagueness challenges are set forth in State v. Duncan, 414 N.W.2d 91, 95-96 (Iowa 1987):
The person challenging a statute carries a heavy burden of rebutting the presumption of constitutionality. If the statute can be made constitutional by a reasonable construction, the court will give it that construction. [State v. McKee, 392 N.W.2d 493, 494 (Iowa 1986).] Thus, a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the constitution. Saadiq v. State, 387 N.W.2d 315, 320 (Iowa 1986). The unconstitutional vagueness of a criminal statute must be demonstrated beyond a reasonable doubt. State v. Wagner, 410 N.W.2d 207, 214 (Iowa 1987). A statute is not unconstitutionally vague if the meaning of the words used can be fairly ascertained by reference to similar statutes, other judicial determinations, the common law, the dictionary, or the common and generally accepted meanings of the words themselves. McKee, 392 N.W.2d at 494.
. . . .
"Thus, to withstand a constitutional attack, a penal statute must satisfy two standards: (1) it must give a person of ordinary intelligence fair notice of what is prohibited, and (2) it must provide an explicit standard for those who apply it." Saadiq, 387 N.W.2d at 321.
Here we must determine whether the statute is unconstitutionally vague as applied to Kaster's situation.
II. Fair Notice.
A statute which fails to give persons of common intelligence fair notice of its meaning and application "violates the first essential of due process of law." State v. Coppes, 247 Iowa 1057, 1062, 78 N.W.2d 10, 13 (1956) (citing Connally v. General Constr. Co., 269 U.S. 385, 391-92, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926) ). The fighting issue is whether the term "criminal offense" is unconstitutionally vague. We are not persuaded the term is vague.
The term "public offense" appears generally in the Iowa Code and is defined in Iowa Code section 701.2: "A public offense is that which is prohibited by statute and is punishable by fine or imprisonment." See also Wright v. City of Cedar Falls, 424 N.W.2d 456, 457-58 (Iowa 1988) (municipal ordinance violations are not public offenses for purposes of Iowa Code chapter 663A); Wenck v. State, 320 N.W.2d 567, 569 (Iowa 1982) ("A simple misdemeanor is unquestionably a public offense."). The term was used in the prior forfeiture law, but the term "criminal offense" is used in the present forfeiture law. Compare Iowa Code § 809.1(3) (1985) with Iowa Code § 809.1(2)(b) (1987).
The term "criminal offense" is not defined in the Iowa Code. However, it appears with some frequency. See Iowa Const. art. I, § 11; Iowa Code§§ 49.77(1), 123.91, 808A.2(1)(a). Compare Iowa Code § 2818 (1851) with Iowa Rev.Code § 4430 (1860) (term "criminal offense" replaced with term "public offense"). In each of these instances the term includes simple misdemeanors. It appears from a review of the statutory law that the legislature generally considers the terms "public offense" and "criminal offense" as synonymous, but defines and uses the term "public offense" for the sake of uniformity.
Upon review of the dictionary definition of the term "criminal offense" and the judicial determinations of other courts, it appears well settled that the term refers to conduct subjecting the offender to imprisonment or fine and includes misdemeanors as well as felonies. See Black's Law Dictionary 975 (5th ed. 1979); 10A Words and Phrases "Criminal Offense" 171-77 (1968 & Supp.1989); 22 C.J.S. Criminal Law § 3(b) at 4-5 (1989).
By reference to similar statutes, prior judicial determinations, and the dictionary, we are satisfied the term "criminal offense" refers to that conduct which is prohibited by statute and is punishable by fine or imprisonment. Accordingly, the term includes statutorily-defined misdemeanors and felonies. Persons of ordinary intelligence would understand the term "criminal *879 offense" refers to any criminal conduct, whether such conduct is classified as a misdemeanor or a felony.
Section 109.76 makes unlawful the use of a net to take fish, except for landing nets used to assist in landing fish. It is clear the legislature has made the netting of fish as described in section 109.76 a criminal offense. See Iowa Code § 109.32 (violation of chapter 109 is a simple misdemeanor with a minimum fine of ten dollars for each offense).
We additionally consider the use of the word "facilitate" in section 809.1(2)(b). Facilitate is defined as "to make easier or less difficult." Webster's Third New Int'l Dictionary 812 (1971). In Platt v. United States, 163 F.2d 165, 166-67 (10th Cir. 1947), the federal court of appeals held the use of the word "facilitate" did not render a federal forfeiture statute void for uncertainty. It concluded that an item "used to assist in the commission of the crime" is subject to forfeiture under the challenged statute.
Courts seek a reasonable interpretation of the term "facilitate" in forfeiture statutes. When interpreting the language of 21 U.S.C. § 881(a)(4) which permits "forfeiture of aircraft, vehicles, vessels which are used ... in any manner to facilitate the transportation, sale, [etc.]" of illegal drugs, some federal circuits have held the use of property "in any manner" in connection with an unlawful drug transaction is sufficient to justify forfeiture. See United States v. 1964 Beechcraft Barron Aircraft, 691 F.2d 725, 728 (5th Cir.1982); United States v. One 1974 Cadillac Eldorado Sedan, 548 F.2d 421, 427 (2nd Cir. 1977). See also United States v. One 1977 Lincoln Mark V Coupe, 643 F.2d 154 (3rd Cir.), cert. denied, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981).
A majority of federal circuits, however, have adopted a more restrictive view requiring a "substantial connection" between the property and the unlawful activity. See, e.g., United States v. 1966 Beechcraft Aircraft Model King Air A90, 777 F.2d 947, 953 (4th Cir.1985); United States v. One 1976 Ford F-150 Pick-Up, 769 F.2d 525, 527 (8th Cir.1985); United States v. One 1979 Porsche Coupe, 709 F.2d 1424, 1426 (11th Cir.1983); United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980). Under this requirement, property merely used to transport a person to the scene of criminal activity does not facilitate a drug sale. See 769 F.2d at 527; 625 F.2d at 1029. Other state courts require a substantial connection between the property and the crime. See, e.g., In re Forfeiture of $5,264, 432 Mich. 242, 262, 439 N.W.2d 246, 255 (1989); In re Forfeiture of 719 N. Main, 175 Mich.App. 107, 118, 437 N.W.2d 332, 334-35 (1989). Cf. State v. Buggs, 219 Kan. 203, 215-16, 547 P.2d 720, 731 (1976).
We interpret "facilitate" as used in section 809.1 to require a substantial connection between the property and the crime. The legislature would not have intended the forfeiture statute to divest private property based on an unsubstantial connection between the property and the underlying criminal activity. Whether the seized property has sufficient nexus with the criminal offense is a factual issue to be determined at trial.
The word "facilitate" is not so uncertain that it fails to give fair notice of what property is subject to forfeiture. Kaster had fair notice that property used to facilitate illegal gill netting is forfeitable property.
III. Explicit Standards.
Although a statute may not be "vague" in the ordinary sense of the word, it may yet violate due process requirements if it fails to provide explicit standards for those who enforce it. As stated in State v. Pilcher, 242 N.W.2d 348, 353 (Iowa 1976): "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Quoting Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222, 227-28 (1972).) In short, the question is whether *880 the challenged statute invites arbitrary and discriminatory enforcement by its very breadth or scope.
The statute clearly limits forfeiture of property used to facilitate a crime. The statute does not give county attorneys and the attorney general the power to determine arbitrarily the scope of the forfeiture provision. Virtually all criminal statutes, even those which are precise, allow discretionary application. We view the forfeiture law no differently. As stated in Caplin & Drysdale, Chartered v. United States, 491 U.S. ____, 109 S.Ct. 2646, 2657, 105 L.Ed.2d 528, 547 (1989): "The Constitution does not forbid the imposition of an otherwise permissible sanction, such as forfeiture, merely because in some cases prosecutors may abuse the processes available to them." We conclude the language of the statute, viewed in light of the procedural safeguards attending it, provides sufficient standards governing its application.
IV. Other Matters.
Other closely related doctrines are not at issue here. The doctrine of "overbreadth" is applicable to state regulations which unnecessarily sweep broadly and invade the area of protected freedoms. State v. Brumage, 435 N.W.2d 337, 343 (Iowa 1989). The doctrine of "selective enforcement" addresses actual arbitrary and discriminatory application of the law. The doctrine is grounded on ordinary equal protection principles and prohibits prosecution based upon an unjustifiable standard such as race, religion, or the exercise of protected rights. See Wayte v. United States, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547, 556 (1985). Nor has a constitutional challenge been raised that a given use of the forfeiture statute might violate the constitutional protection against excessive fines. See United States v. Premises Known as 3639-2nd St., N.E., 869 F.2d 1093, 1098 (8th Cir.1989) (Arnold, J., concurring).
V. Disposition.
We reverse the district court ruling that section 809.1(2)(b) is unconstitutionally vague. We note our decision comports with a recent federal court of appeals decision. In United States v. One 1980 Red Ferrari, 875 F.2d 186 (8th Cir.1989), an automobile was forfeited because it was used to facilitate criminal activity. The vehicle owner argued that 21 U.S.C. section 881 and its Iowa counterpart, Iowa Code section 809.1, are unconstitutional because they are vague and overbroad. On appeal, the 8th Circuit concluded the statutes were not vague or overbroad and affirmed the district court order. We remand to the district court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All justices concur except SNELL, CARTER and LAVORATO, JJ., who dissent.
SNELL, Justice (dissenting).
I respectfully dissent. Iowa Code section 809.1(2)(a)(b) is void as applied to this defendant because it is unconstitutionally vague in violation of the due process guarantees of the federal and state constitutions. U.S.C.A. Const.Amend. 14; Iowa Const. art. I § 9.
In seeking a constitutional footing to uphold Iowa's forfeiture statute the majority has molded the language to its own liking. Words have magically appeared that were not in the statute when passed by the legislature and are not there now. Nowhere does the statute refer to a "substantial connection" between the property forfeited and the crime committed. The Iowa statute by its plain and undefined terms vacuums all property used to "facilitate" the commission of a criminal offense.
The standards for evaluating vagueness were enunciated in Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972):
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.

*881 Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.
The Supreme Court has cautioned that the tests for vagueness are not mechanical exercises. A criminal ordinance is more closely examined than a civil one, because criminal penalties are more severe. See Record Head Corp. v. Sachen, 682 F.2d 672 (7th Cir.1982). Vagueness is also tested by more exacting standards when constitutionally protected rights are threatenedin such circumstances vagueness and overbreadth analysis are cognate. Id. 682 F.2d at 674.
In the instant case we have the confluence of these rules of construction, referenced by the majority and ignored. Until now, we have had a long history of eyeing forfeitures with great caution. See, e.g., State v. McGraw, 191 Iowa 1090, 1093-94, 183 N.W. 593, 595 (1921); In re Emerson's Estate, 191 Iowa 900, 906, 183 N.W. 327, 329 (1921); State ex rel. Shaver v. Iowa Tel. Co., 175 Iowa 607, 623, 154 N.W. 678, 683 (1916). We have said forfeitures are penal in nature. State v. One Certain 1982 Honda Auto., 353 N.W.2d 90, 91 (Iowa 1984); State v. One Certain 1969 Ford Van, 191 N.W.2d 662, 666 (Iowa 1971). They are disfavored in law and equity. Chicago R.I. & P.R. Co. v. City of Iowa City, 288 N.W.2d 536, 541 (Iowa 1980); Lovlie v. Plumb, 250 N.W.2d 56, 63 (Iowa 1977); Collins v. Isaacson, 261 Iowa 1236, 1242, 158 N.W.2d 14, 17-18 (1968). They should be strictly construed. State v. One 1972 Chevrolet Pick-Up Truck, 252 N.W.2d 466 (Iowa 1977).
Under the guise of "strictly construing" the forfeiture provision at issue, the majority seeks to render the word "facilitate" less opaque by requiring a "substantial connection" between the forfeited property and the crime. The term was coined by some federal courts in dealing with the provisions of a federal drug forfeiture statute, 28 U.S.C. section 881(a)(4). The majority claims that this statute is similar to our state's sweeping forfeiture law. It reasons that the application of the judicial doctrine of a substantial connection between the crime and the forfeited property sufficiently modifies the phrase "used to facilitate" so as to render it constitutionally acceptable.
The majority fails to point out, however, that the federal forfeiture statute construed by federal courts to require a substantial connection is very different from the Iowa statute. The federal statute, for example, enumerates the type of property that may be forfeited and requires the commission of a specific crime to trigger forfeiture. Most importantly, the doctrine requiring a "substantial connection" was minted in reference to the forfeiture of conveyances used "in any manner to facilitate the transportation, sale, receipt, possession or concealment" of controlled substances. The judicially imposed requirement of a "substantial connection" has significance in defining by circumscription the clause "in any manner to facilitate." Iowa's statute does not contain the words, "in any manner," and as a consequence the doctrine has no referent connection with the Iowa statute. The phrase "substantial connection" is actually dichotomous to "facilitate."
Although the majority has found meaning from the dictionary description of "facilitate," little is thereby done to solve the constitutional defect of vagueness. The problem with the word "facilitate," absent any further guidance by the legislature, is that its elasticity knows no bounds. Property thought by one policeman, judge or jury to be used to make easier the commission of a crime may not be so viewed by another. The statute is unconstitutionally vague because "there are no standards governing the exercise of discretion." Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L.Ed.2d 110 (1972). The Seventh Circuit held a *882 zoning ordinance unconstitutionally vague because:
"No standard for conduct is specified at all." Such a provision simply has no core. This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the due process clause.

Entertainment Concepts, Inc. III v. Maciejewski, 631 F.2d 497, 501 (7th Cir.1980) (emphasis in original) (quoting Smith v. Goguen, 415 U.S. 566, 578, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974)).
In Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the Supreme Court guided us as follows:
As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Hoffman Estates v. Flipside, Hoffman Estates, Inc., supra [455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) ]; Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine "is not actual notice, but the other principal element of the doctrinethe requirement that a legislature establish minimal guidelines to govern law enforcement." Smith, 415 U.S. at 574, 94 S.Ct. at 1247-1248. Where the legislature fails to provide such minimal guidelines a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Id. at 575, 94 S.Ct. at 1248.
The sporadic enforcement of the statute is fully demonstrated in the instant case by the testimony of the arresting officer.
Q. And you and Officer Schutte decided to forfeit the boat; is that correct?
A. That's correct.
Q. Why did you decide to do so?
A. Because of the fact that we viewed this as a far more heinous, in respect to fish and game matters, crime that the average fish and game violation is. In the first place, it was a matter of commercialization since there was a commercial fish hatchery involved; and we thought that the fish were beingfor that hatchery operation were being taken illegally from the lake. And even if it had been just a gill netting operation for private use, we may well have decided to forfeit some of the things; but we don't do that as a normal circumstance of average fish and game violations. It takes quite an outlandish circumstance before we decide to go to that extent.
Q. And you felt that the circumstances existed in this case?
A. That's correct.

....
Q. Now, you indicated that you don't normally forfeit a boat for a normal violation of State Conservation laws?
A. Such as a fishing license or an over limit of fish, no, we wouldn't contemplate it for that.
Q. So you select certain crimes that are heinous enough to forfeit the boat; is that correct?
A. That's correct, or any other piece of equipment for that matter.
Other officers may or may not view this or other crimes to be heinous enough to call for forfeiture. Would possession of ten fish over the daily limit prompt a forfeiture; if not, would twenty? Fifty? In this case the officers seized for forfeiture Kaster's boat, trolling motor, depth finder, and boat trailer. His car that pulled the boat trailer was not seized although it could have been since the exception in section 809.1(4) applies only to motor vehicle law violations. How can any meaningful distinction be drawn that the boat trailer "facilitated" commission of the crime while the car that brought it to the scene did not? If a defendant was illegally fishing out of his home would his home be forfeited since it *883 was used to physically support him and thereby facilitated committing the crime?
In Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) the Supreme Court struck down a vagrancy statute for vagueness. The court found it unconstitutional because it encouraged arbitrary and erratic arrests and convictions. It furnished a convenient tool for "harsh and discriminating enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." Id. 92 S.Ct. at 847. Answering the argument of necessity the court said: "Of course, vagrancy statutes are useful to the police. Of course, they are nets making easy the roundup of so-called undesirables. But the rule of law implies equality and justice in its application." Id. at 848. See also Smith v. Goguen, 415 U.S. 813, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).
I would affirm the district court's holding the forfeiture statute unconstitutional based on the void for vagueness doctrine.
CARTER and LAVORATO, JJ., join this dissent.
NOTES
[1] A "gill net" is "a flat net suspended vertically in the water with meshes that allow the head of a fish to pass but entangle its gill covers as it seeks to withdraw." Webster's Third New Int'l Dictionary (1971) 957.
[2] A Muskie, a Northern Pike, and a Silver Bass were found in the live well of the boat. Each had net marks on it.
[3] The boat contained a float (plastic milk jug), a metal fence post, and a brick. Kaster was wearing a pair of chest waders.