STATE of Iowa, Appellee,

v.

Vaughny Jesse DYKES, Appellant.

No. 89–1506.

Supreme Court of Iowa.

June 19, 1991.

Rick L. Olson, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., James Smith, County Atty., and James Ward, Asst. County Atty., for appellee.

HARRIS, Justice.

Cash and an automobile were ordered forfeited under Iowa Code chapter 809 (1989). On appeal defendant contends there was no substantial evidence to support the trial court finding that the forfeited property had been used in the commission of a criminal offense. We affirm.

In pointing to a specific criminal activity the State emphasizes, but does not limit itself to, evidence that the defendant Vaughny Jesse Dykes possessed controlled substances with intent to deliver, in violation of Iowa Code section 204.401. Substantial evidence supports such a charge.

The police officers found, in addition to the items subject to forfeiture, certain amounts of a controlled substance known as methamphetamine on Dykes' person, in a desk drawer of his bedroom and a smaller amount in his automobile. The officers also discovered a "cutting agent" in the automobile, though no cutting agent was found inside the home. A cutting agent is a powder which is used to mix with illicit drugs to increase their quantity, in order to make more money. Certain drug paraphernalia such as straws, mirrors and scales, were also found in Dykes' bedroom. A bag of methamphetamine, weighing close to one-fourth of a pound and worth approximately $16,000, was found in the dining room of Dykes' residence.

A police department narcotics officer testified as an expert. It was his opinion that the evidence, considered as a whole, indicated the selling of drugs. He based his opinion on the large amount of cash, the close proximity of the drugs to the cash, coupled with other drug paraphernalia.

■ I. We disfavor forfeiture statutes and construe them strictly. *In re Kaster*, 454 N.W.2d 876, 877 (Iowa 1990); *Jamison v. Knosby*, 423 N.W.2d 2, 5 (Iowa 1988); *Chicago R.I. & P.R. v. City of Iowa City*, 288 N.W.2d 536, 541 (Iowa 1980); *State v. Kaufman*, 201 N.W.2d 722, 723 (Iowa 1972). In *In re Bly*, 456 N.W.2d 195, 200 (Iowa 1990), we held that homestead rights in property which was used as an illegal drug trafficking facility took precedence over the State's right of forfeiture. We

nevertheless interpret forfeiture statutes so as to promote their legitimate purpose. *Kaster*, 454 N.W.2d at 877; *State v. Merchandise Seized*, 225 N.W.2d 921, 926 (Iowa 1975).

■ The burden is on the State to prove by a preponderance of the evidence that the property was forfeitable. Iowa Code § 809.11(1) (1989). We accord considerable deference to the trial court holding. We have said:

[This court will] view the evidence in the light most favorable to sustaining the district court judgment. The trial court's findings are construed liberally in order to support its result. A finding is supported by substantial evidence if it may be reasonably inferred from the evidence. If supported by substantial evidence and justified under the law, the findings are binding on us and the judgment will not be disturbed on appeal....

The possibility of drawing inconsistent conclusions from the same body of evidence does not prevent a finding from being supported by substantial evidence.

*In re Rush*, 448 N.W.2d 472, 477 (Iowa 1989) (citations omitted); *see also State v. One Certain Conveyance*, 207 N.W.2d 547, 548 (Iowa 1973) ("[W]e will not reverse unless the evidence is utterly wanting to support the conclusion of the trial court.").

■ To uphold a forfeiture we require a showing of a "substantial connection between the property and the crime." *Kaster*, 454 N.W.2d at 879. This is a somewhat more rigorous standard than some federal courts, employing federal law, apply. *Id.* Dykes contends the showing here, both as to the cash and the automobile, does not meet the substantial connection standard.

■ II. *The cash.* We agree with the trial court finding that there was a substantial connection between the $1106 in cash found on Dykes' person and in his bedroom with drug trafficking, especially in view of the drugs and drug paraphernalia found in his home.

In his defense Dykes testified he received $1500 in cash from his bank just

days before the search warrant was executed. He backed up this testimony with his bank statements and a canceled check made payable to "cash." Dykes contends this evidence that he did not receive the cash directly from drug customers negates any connection with drug trafficking. We think not. Under the record such a sizable amount of cash in proximity to the drugs fits well within the pattern of making change in a drug operation. We rejected an argument similar to Dykes' in *Rush*, 448 N.W.2d at 475.

We think the amount of cash, its location, and proximity to the drugs is sufficient to support its forfeiture. *Rush*, 448 N.W.2d at 477–78.

■ III. *The automobile.* Connecting the automobile with a criminal offense might be a closer question if we were to base its forfeiture strictly on the crime of possession of a controlled substance with intent to deliver under Iowa Code section 204.401(1). The required substantial connection between the car and that offense seems at least arguable in view of the "cutting agent" found with the drugs in the vehicle. On the other hand some jurisdictions hold that drugs found in a car will not suffice for forfeiture. *See State v. One 1972 Pontiac Grand Prix, Etc.*, 90 S.D. 455, 242 N.W.2d 660, 663 (1976) (misdemeanor possession insufficient; felony possession required). But in *Kaster*, 454 N.W.2d at 878–79, we upheld forfeitures based alone on misdemeanors.

Dykes assumes the only criminal offense to which connection with the automobile is attempted is Iowa Code section 204.401(1). The trial court did not so limit its holding; no specific criminal offense was identified in the forfeiture order. On appeal the State in part supports the forfeiture on the contention that another crime was clearly shown, one to which the car was plainly and closely connected: simple possession of the substance under Iowa Code section 204.401(3).

■ The State's contention finds support in the 1986 change in our forfeiture law. The General Assembly adopted the uniform controlled substances Act. 1971 Iowa Acts ch. 148. Iowa Code section 204.505 (1971), the original forfeiture provision adopted with the Act, was repealed when present Iowa Code chapter 809 (1991) was adopted. 1986 Iowa Acts ch. 1140, § 19. Forfeitable property now includes any property illegally possessed and any property which has been used to facilitate a criminal offense. Iowa Code § 809.1(2)(a) and (b). Cases from other jurisdictions, interpreting the uniform controlled substance Act, are not in point to interpret Iowa's present forfeiture law.

It was a criminal offense for Dykes to possess the controlled substance found in his automobile and it is apparent that the vehicle was used to facilitate the possession. We conclude that the automobile was forfeitable.

IV. We feel obliged to state that facts in this case are important to our holding. Cases can be imagined where property forfeited could be so out of proportion to an insignificant public offense as to constitute an unconstitutionally excessive fine under the eighth amendment to the federal constitution. We have no such case here. The evidence indicates a sizable illicit drug operation.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except SCHULTZ and LAVORATO, JJ., who separately dissent.

CARTER and SNELL, JJ., join both dissents.

LAVORATO, J., also joins the dissent of SCHULTZ, J.

LAVORATO, Justice (dissenting).

In *Kaster* we held that property can be forfeited for the violation of a simple misdemeanor. *In re Kaster*, 454 N.W.2d 876, 878–79 (Iowa 1990). By that decision we put ourselves in a position appellate courts dread: sanctioning an unconscionable and absurd result.

Today we hold that a motor vehicle can be forfeited because its owner used it while in possession of a controlled substance.

*See* Iowa Code §§ 204.401(3) (possession of a controlled substance), 809.1(2)(b) (defining forfeitable property as any property used or intended to be used to facilitate commission of a criminal offense). Possession of a controlled substance is a serious misdemeanor. Iowa Code § 204.401(3).

Tomorrow we may be asked to uphold the forfeiture of an expensive vehicle for violation of the open container law. *See* Iowa Code § 123.28. That statute prohibits a driver from having an open container of an alcoholic beverage in a vehicle while on a public street or highway. The violation of this statute is a simple misdemeanor. *See id.*

The legislature has excepted violations of chapters 321 and 321J from the forfeiture provisions of Iowa Code chapter 809. *See* Iowa Code § 809.1(4). Chapter 321 deals with rules of the road, and chapter 321J deals with drunk driving. Obviously, the legislature did not think violations of these chapters are serious enough to warrant forfeiture of the motor vehicle involved.

The open container law serves the same purpose as the .drunk driving law. Both are designed to keep drunk drivers off the road. Yet, whether by design or oversight, the legislature has not similarly excepted violations of the open container law from the forfeiture provisions.

I suggest forfeiting an expensive automobile for violation of the open container law would be an unconscionable and absurd result. But that is the result *Kaster* would lead us to.

When we reach such a point, we do not hesitate to turn away from a literal interpretation of the statute. *See, e.g., Richmond v. State,* 464 N.W.2d 125, 126 (Iowa 1990). One court did just that to avoid forfeiture of an expensive motor vehicle. *State v. One Porsche Two–Door,* 526 P.2d 917, 919 (Utah 1974). The authorities attempted to forfeit the vehicle because the driver, while in the vehicle, had a small amount of marijuana in his possession. The court gave the following examples of harsh results that might occur from a literal interpretation of the forfeiture statute under attack:

Under the legislation Price would have to forfeit his $10,000 Porsche if he happened to be sitting in it in his driveway in silence and serenity, smoking a marijuana cigarette, and was approached by a gendarme, who took his car out from under him. Under this statute he could have his car taken from him if he were taking his six-year-old to school and happened to have a marijuana cigarette in his pocket,—or under such circumstances he was rushing his pregnant wife to the hospital,—or if he were driving the Porsche out of a burning garage,—or trying to escape from a highwayman or a flood or anything else.

*Id.* at 919. Under *Kaster,* and now this case, our forfeiture law applies in these examples if the authorities choose to enforce it.

I think now is the time to draw the line. I would follow the lead of one court faced with the same dilemma: I would limit our forfeiture law to a violation that constitutes a felony. *See State v. One 1972 Pontiac Grand Prix,* 90 S.D. 455, 242 N.W.2d 660, 662–63 (1976).

I would also invite the legislature to limit the forfeiture law to certain crimes. The federal government and most states do so. In addition, the federal statute has standards which avoid the vagueness problems that plague our forfeiture statute. *See In re Kaster,* 454 N.W.2d at 881 (Snell, J., dissenting) (joined by Carter and Lavorato, JJ.). Such limitations—applying forfeiture laws to felonies only and to certain crimes—would tend to avoid unfair, indiscriminate, and unfettered application of the forfeiture statute.

I have an additional problem with the majority opinion. It goes too far with respect to cash found in close proximity to drugs or on persons found at the scene of a drug raid. Under the majority's view the authorities can now take any amount of cash, regardless of its source, as long as an expert testifies a drug dealer needs cash to make change. I would require some showing that the cash was used in a drug transaction or was derived from it. *See In re Rush,* 448 N.W.2d 472, 479–80 (Iowa 1989)

**850**

(Snell, J., dissenting) (joined by Lavorato, J.).

By this dissent I do not mean to imply that I concede Iowa Code section 809.1(2)(b) passes constitutional muster. Nor do I mean to imply that our communities should relax their fight against drugs. But I stand by the dissent in *Kaster*. *See Kaster*, 454 N.W.2d at 880 (Snell, J., dissenting) (joined by Carter and Lavorato, JJ.). I still believe the section violates federal and Iowa due process guarantees because it is unconstitutionally vague. And I suggest it may violate other constitutional provisions not yet addressed by this court. The legislature should take a close look at the forfeiture law and eliminate the law's obvious infirmities.

For all these reasons I would reverse.

CARTER and SNELL, JJ., join this dissent.

SCHULTZ, Justice (dissenting).

The simple fact that an illegal drug is found in an automobile should not supply grounds to forfeit the vehicle when the illegal activity is possession of a controlled substance. *"Forfeitable property"* includes property "which has been used or is intended to be used to facilitate the commission of a criminal offense...." Iowa Code § 809.1(2)(*b*) (1989). We have stated that there must be a "substantial connection" or "sufficient nexus" between the crime and the seized property. *In re Kaster*, 454 N.W.2d 876, 879 (Iowa 1990). I would conclude that this test is not met when the illegal activity is possession of a controlled substance and the controlled substance is present in an automobile, building, or home.

I believe that the majority opinion ignores a basic tenet of statutory construction that requires the reasonable interpretation of a statute to avoid an absurd result. Applying the reasoning of the majority opinion, we would allow forfeiture of the vehicles and homes of shoplifters who place pilfered items in their vehicles or homes, regardless of the value of the stolen items. Also important to ask is whether we would allow forfeiture of the homes of employees who take employer-issued pencils home with them, or the homes of parents who permit their children to illegally possess tobacco in their rooms.

I conclude that the vehicle in this case was no more than a large container used to temporarily store the illegal drug. I cannot ascribe to the wide brush used by the majority. Rather, I would find that only storage containers that are primarily used to store illegal substances should satisfy the sufficient nexus test in *Kaster*. The primary uses of vehicles and homes do not include storage of illegal substances. In this case, there was no evidence that the automobile was obtained or used for the purpose of storing illegal drugs. Consequently, I would reverse the district court's order forfeiting defendant's automobile.

CARTER, LAVORATO, and SNELL, JJ., joins this dissent.