STATE of Iowa, Plaintiff–Appellee,

v.

PROPERTY SEIZED FROM JORGE L. RIOS, Defendant,

Jorge L. Rios, Claimant–Appellant.

No. 90–999.

Court of Appeals of Iowa.

Oct. 29, 1991.

Charles A. Coppola of Coppola & Gazzo, Des Moines, for claimant-appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., John P. Sarcone, County Atty., and Jamie D. Bowers, Asst. County Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

The question is whether there is substantial evidence to order the forfeiture of guns, ammunition, cash, and a gym bag under Iowa Code chapter 809 (1989). The trial court found there was. We affirm.

The questioned items came under State control following a search of claimant-appellant Jorge L. Rios's person, car, and residence. It is the State's position the items were used in the claimant's drug dealing business. The claimant has not been convicted of any drug-related crime, no charges are pending against him, and no illegal substances were found from the search of the claimant's person, vehicle, or home.

We review the evidence in the light most favorable to the State. *See In re Rush*, 448 N.W.2d 472, 477 (Iowa 1989).

On March 1, 1990, a narcotics officer contacted Arthur Scigliano to attempt to purchase an ounce of cocaine. The officer and Scigliano went to a restaurant parking lot to wait for Jose Morrero. Morrero came out of the house at 3005 Dean Avenue in Des Moines. At the time, claimant lived in the house with his girlfriend and her three children. Upon leaving the house, Morrero came to where the officer and Scigliano were parked. He got $650 from the officer for the cocaine. Scigliano and Morrero then went to the west door of the house at 3005 Dean Avenue and went inside. A second officer observed the events from a distance and saw a light in an upstairs room come on after the men had entered the house. The second officer did not see anyone let the men into the house. Six minutes later he saw the two men leave the house. Scigliano and Morrero returned to the officer's vehicle and gave him a plastic bag containing white powder. The contents of the bag tested positive for cocaine.

The officer observed the house on Dean Avenue for about an hour on each of the next two days. On the first day, the officer saw two vehicles come to the residence and leave. The next day he saw three vehicles do the same thing.

The officer wanted to purchase more cocaine. He and a third officer met Scigliano at Scigliano's apartment in the very early morning hours of March 6, 1990. Scigliano attempted to contact Morrero by phone. Scigliano explained to the officer that Morrero was cutting up a kilo of cocaine at a Des Moines motel. The officer learned Morrero had rented rooms at the Hawkeye Motel. The officer obtained a search warrant for the motel and 3005 Dean Avenue. The warrants were executed in the afternoon of March 6, 1990. At the motel the police found Morrero and two grams of cocaine. As the officers were preparing to leave the motel, the claimant drove in the motel parking lot, honked his horn, and parked his car. He knocked on the doors of the motel rooms where the cocaine was found. Claimant and his automobile were searched. No drugs were found. Claimant had $2,311 in cash on his person. This was seized, and is a subject of this forfeiture action. The balance of the subject property came from a search that day of claimant's residence. Claimant was told his residence was being searched. He consented to the searches. At claimant's residence the officers took a shotgun, two handguns with holsters, a bag of ammunition, cash of $6,880, a gym bag with an Ohaus scale, a smaller scale, plastic sandwich bags, an envelope with some numbers written on it, a straw, and a page from claimant's girlfriend's daughter's diary.

The State introduced evidence (1) the straw found at claimant's residence was a tube straw that could be used to ingest cocaine, (2) the scales could be used to weigh small quantities of controlled substances, and (3) the sandwich bags could be used to package narcotics. There was also testimony (1) drug traffickers have large amounts of cash, (2) the money found on claimant's person and in his home was consistent with drug trafficking, (3) the envelope with numerical notations was consistent with drug dealing, (4) the locations of the handguns in the house indicate they were used to protect the drugs handled in the house, and (5) the items seized were consistent with drug trafficking. An officer of the Des Moines Police Department testified the fact the officers found no drugs on claimant, in his vehicle, or in his residence was consistent with drug trafficking.

The weapons were legal and no other drug paraphernalia was found.

Other evidence that came in, over objection, was the narcotics officer's testimony that Scigliano said at the time of the March 1, 1990 drug buy, that George was a drug dealer and George weighed the purchased cocaine at the kitchen table. The claimant was referred to in the proceedings as George. The officer also testified, over objection, that Scigliano told him on March 6, Morrero and George were at the Des Moines motel cutting up a kilo of cocaine.

The trial court found the cash, handguns, ammunition, holsters, scales, and shotguns were used, or intended to be used, to facilitate the criminal offense of unauthorized delivery of, or conspiracy to deliver, controlled substances, to-wit cocaine, in violation of Iowa Code sections 204.206(2)(d), .411(1), (1989), and the cash was also acquired as the proceeds of the same criminal offense. The trial court ordered the property forfeited.

■ Forfeiture statutes are not favored and are construed strictly. *See State v. Dykes*, 471 N.W.2d 846, 847 (Iowa 1991); *See State v. Dykes*, 471 N.W.2d 846, 847 (Iowa 1991); *In re Kaster*, 454 N.W.2d 876, 877 (Iowa 1990); *Jamison v. Knosby*, 423 N.W.2d 2, 5 (Iowa 1988).

■ The burden is on the State to prove by a preponderance of the evidence the property was forfeitable. Iowa Code § 809.11(1) (1991). We view the evidence in the light most favorable to sustaining the district court judgment. *Dykes*, 471 N.W.2d at 847. The trial court's findings are construed liberally to support its result. *Id.* A finding is supported by substantial evidence if it may be reasonably inferred from the evidence. *Id.* The possibility of drawing inconsistent conclusions from the same evidence does not prevent a finding from being supported by substantial evidence. *Id.*

■ To uphold a forfeiture, there must be a showing of a substantial connection between the property and the crime. *See Kaster*, 454 N.W.2d at 879. This is a more rigorous standard than some federal courts apply under federal law. *Id.*

No charges have been filed against claimant. This does not, however, preclude forfeiture, as Iowa Code section 809.11(1) (1989) provides, in part:

1. ... forfeiture is not dependent upon a prosecution for, or conviction of, a criminal offense and forfeiture proceedings are separate and distinct from any related criminal action.

Claimant was not found with any illegal substances. Therefore, this case is distinguishable from *State v. Dykes*, 471 N.W.2d 846 (Iowa 1991) (cash on defendant's person was forfeited where a controlled substance known as methamphetamine was found on defendant's person, in a desk drawer of his bedroom, in his automobile, and in the dining room of defendant's residence); and *In re Kaster*, 454 N.W.2d 876 (Iowa 1990) (boat was forfeited for gill netting where fish with net marks were found with a wet gill net and other items commonly used in gill netting in the boat which had just been removed from the lake).

Forfeitable property is defined by Iowa Code section 809.1(2) to include, among other things:

b. Property which has been used or is intended to be used to facilitate the commission of a criminal offense or to avoid detection or apprehension of a person committing a criminal offense.

■ For the property to be forfeitable under the statute, it is necessary for the State to show the claimant was connected with the drug dealing. The trial court found, and we agree, there was substantial evidence to find a conspiracy dealing in drugs existed between Scigliano and Morrero. The more difficult question is whether there is substantial evidence to support the trial court's findings claimant was a part of the conspiracy.

The question is whether the evidence supports the findings by a preponderance of evidence. We look first to the items seized, namely: (1) cash, (2) guns, (3) straw, and (4) scales. In looking at the items claimed to be associated with drug dealing, we are careful to require evidence the items are directly associated with drug dealing and not just items that may be found in the possession of innocent persons. *See generally United States v. Jones*, 759 F.2d 633, 643 (8th Cir.), *cert. denied*, 474 U.S. 837, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985).

■ CASH. Drug dealers may have large amounts of cash, but this does not mean persons who carry large amounts of cash on their person and have large amounts of cash in their homes are drug dealers. There are a number of people that do not trust banks. There are a number of people who deal in legitimate cash businesses. Claimant testified he was afraid of banks, sold old cars for cash, and was saving his money to bring his mother from Cuba. The $650 the officer gave to Scigliano and Morrero on March 1, was in marked bills, but those bills were not found in the money claimant had. Consequently, there is no direct evidence connecting the money to any drug sales. Furthermore, claimant made reasonable explanations for the cash he had in his home and on his person, even though an explanation on his part was not necessary. The mere fact a person determined to be a drug dealer has large amounts of cash does not alone establish the cash is forfeitable. *Rush*, 448 N.W.2d at 477–78. The State bore the burden of showing the relationship.

SANDWICH BAGS. We give little credence to the sandwich bags. The sandwich bags are a well-known type available at all grocery stores and used for a number of advertised purposes. They are found in most homes.

STRAW. The straw does appear to be of a particular type used for ingesting cocaine. While it may be related to drug use, it is not evidence of drug dealing.

SCALES. One scale is a scale probably purchased for $1 at a discount store. It is calibrated in both grams and ounces. We

give little credence to that scale. The second scale is a large sophisticated scale. It is calibrated only in grams. It is expensive and would most likely be purchased for a specific purpose. It would not, except for an extraordinary purpose, be found in a bedroom of a home. We consider the scale some evidence the claimant was engaged in the conspiracy.

■ Statements of Scigliano, as related by the officer, connect claimant to the conspiracy. The officer testified as to (1) the statements of Scigliano about George's involvement when the officer and Scigliano were at the restaurant parking lot on March 1, (2) the statements of Scigliano about George's involvement when he came out of the Dean Avenue house, and (3) the statements of Scigliano about George's involvement when he could not locate Morrero. Claimant contends the trial court erred in admitting these statements over his hearsay objection. The State contends the statements were not hearsay under Iowa Rule of Evidence 801(d), which provides in applicable part:

(d) STATEMENTS WHICH ARE HEARSAY. A statement is not hearsay if

\* \* \* \* \* \*

(2) *Admission by Party-Opponent.* The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The admission of these statements is dependent on the showing of a coconspiracy between the claimant and Scigliano, and a showing that the statement was made during the course of and in furtherance of the conspiracy. *See generally Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2778–81, 97 L.Ed.2d 144, 151–56 (1987); *State v. Florie,* 411 N.W.2d 689, 695–96 (Iowa 1987).

■ Claimant argues the State must first produce evidence other than the challenged statements to prove he and the declarant (Scigliano) were engaged in a concert action when the declarant made the challenged statements. We agree with

claimant for the statements to be admissible under Iowa R.Evid. 801(d)(2)(E) it is first necessary for the State to prove the conspiracy by evidence other than the challenged statements, that is, the evidence relied on to establish the conspiracy must include some proof independent of the coconspirator's statement. *See Florie,* 411 N.W.2d at 695–96. The question we need to address is whether the evidence, other than the challenged statements, is substantial evidence to support the trial court's finding Scigliano and claimant were coconspirators. This is a very close question. We find there was substantial other evidence to prove a conspiracy by the preponderance of the evidence. Evidence Morrero came from and went into claimant's residence while conducting the March 1 sale is some evidence of claimant's connection, even though, as claimant argues, there was no evidence placing him at his home that evening. The evidence claimant went to the motel room where the cocaine was found is additional evidence of claimant's connection. It was not error for the trial court to admit the challenged statements and consider them in making its decision the property should be forfeited. We affirm.

AFFIRMED.