**In the Matter of Property Seized From Melissa Ann SCOTT and Gad Lee Scott, Appellants.**

**No. 92–1135.**

Supreme Court of Iowa.

Nov. 24, 1993.

Vern M. Ball, Ball Law Offices, Bloomfield, for appellant Melissa Ann Scott.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., R. Kurt Swaim, County Atty., and John Courter, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

This is an appeal from an order forfeiting all interest of appellant Melissa Ann Scott in a 1988 Oldsmobile Cutlass automobile and transferring title thereof to the State of Iowa. The forfeiture order was entered pursuant to Iowa Code section 809.10(3) (1991), based on the court's finding that the motor

vehicle in question had been used to facilitate the commission of a criminal offense involving the delivery of a controlled substance.

Appellant contends on this appeal that the evidence failed to establish that the 1988 Oldsmobile Cutlass automobile owned by her had been used in the commission of the alleged drug transaction. In the alternative, she urges that, if the vehicle was so used, she, as the vehicle's owner, had no participation in the alleged criminal transaction. Finally, she argues that prejudicial hearsay evidence was improperly allowed over objection at the forfeiture hearing. After considering each of these arguments, we conclude that the judgment of the district court must be affirmed.

The evidence reveals that Melissa Ann Scott became the owner of the motor vehicle at issue on March 2, 1992, by inheritance upon the death of her mother. The automobile was titled in her name alone. It was seized by the State on May 6, 1992, at the time that law enforcement officers were executing a search warrant on the premises of Melissa Ann Scott and her husband, Gad Lee Scott, pursuant to their investigation of alleged controlled substance violations involving methamphetamine. A notice to forfeit the automobile was served on May 7, 1992, based on an alleged transaction unrelated to the search warrant.

The State sought to base the attempted forfeiture on the alleged use of Melissa's automobile to facilitate a marijuana sale on April 23, 1992. Evidence presented by the State indicated that, at 9:20 p.m. on that date, an undercover agent for the Southeast Iowa Drug Agency Task Force went to the residence of one Brian Miller in Bloomfield, Iowa, and asked to purchase marijuana. The officer had purchased marijuana from Miller on prior occasions. On this occasion, he gave Brian sixty dollars. Brian stated that he would have to obtain the marijuana from Gad Scott. The officer waited at the Miller residence while Brian left in a Honda automobile to obtain the marijuana.

While waiting at the Miller residence for Brian Miller's return, the undercover agent chatted with Brian Miller's wife, Teresa, who is the sister of appellant Melissa Ann Scott.

After some time passed, the undercover agent, who knew that Gad Scott only lived two blocks away, complained about the delay. Teresa Miller then told him that Gad Scott did not have the marijuana at his residence and that he and Brian would have to go to some unspecified location to secure it.

Other evidence offered at the forfeiture hearing included testimony by police officers conducting surveillance on the Brian Miller residence and the Gad Scott residence on the evening of April 23, 1992. They testified that, after departing his home at 9:29 p.m., Brian Miller drove his Honda automobile directly to the Gad Scott residence. At 9:44 p.m., Brian Miller and Gad Scott left the latter's residence in Melissa's 1988 Oldsmobile Cutlass. Shortly before 10 p.m., Brian Miller's Honda was still parked in the street in front of the Scott residence and Melissa's Cutlass had not returned to that location. At 10 p.m., the surveillance team sighted Melissa's 1988 Oldsmobile Cutlass back at the Scott residence. Soon thereafter, Brian Miller returned to his residence and completed the marijuana sale to the undercover officer.

Also offered at the hearing was testimony of an Ottumwa police officer that Melissa had personally been present on May 21, 1991, when Gad Scott made a marijuana sale from Scott's automobile. This was not the automobile in the present dispute. This officer also testified that, when he was at the Scott residence on August 27, 1991, acting in an undercover role, Melissa warned him that the police were watching them but that, notwithstanding that fact, her husband could obtain methamphetamine for sale. Another police officer testified that, at the time the search warrant was executed at the Scott residence on May 6, 1992, Melissa specifically asked what she could do to prevent the forfeiture of her automobile. This officer testified that when she was told she would have to show that she did not know the vehicle was being used for drug transactions she replied that she could not say that because it would be lying.

Melissa testified at the hearing on return of seized property that she had no knowledge

that her husband, Gad, was using this particular automobile for illegal drug transactions on any occasion. She further testified that he did not have her permission to use this automobile and that she sought to enforce that by keeping control of the keys to the car. She testified that at the time of the alleged April 23, 1992 transaction upon which the State's forfeiture claim was based she was at home sleeping, having gone to bed at 8 p.m.

The district court found that the State had established by a preponderance of the evidence that (1) Melissa's 1988 Oldsmobile Cutlass automobile had been used to facilitate the sale of marijuana on the evening of April 23, 1992; and (2) Melissa, as owner of the automobile, knew that her husband was using it for drug transactions and that she knew that he was using her automobile on April 23, 1992, to transport marijuana for sale. Based on these findings, the district court ordered that Melissa's interest in the motor vehicle be forfeited.

I. *The Admissibility of Teresa Miller's Statements.*

■ Because the evidence in question has a bearing on appellant's challenge to the sufficiency of the State's proof, we will first consider the admissibility of Teresa Miller's statements to the undercover officer. This issue is important because these statements are the only evidence directly linking the trip by Gad Scott and Brian Miller in Melissa's Oldsmobile Cutlass to the act of obtaining the marijuana ultimately sold to the undercover agent. The trial court admitted the challenged statements as being those of a coconspirator under Iowa Rule of Evidence 801(d)(2)(E). Appellant urges that this was error because a conspiracy was not established by evidence independent of the challenged statements. We disagree.

We have recognized that it is not necessary to completely ignore the statements sought to be admitted under rule 801(d)(2)(E) in considering whether a conspiracy has been sufficiently established for purposes of admitting those statements as evidence of the primary crime charged. *State v. Florie,* 411 N.W.2d 689, 696 (Iowa 1987). This is true because a conspiracy

mounted and carried on without words would be unusual. In the usual case, many of the statements uttered during a conspiracy are an integral part of the concerted action that constitutes the conspiracy. *See United States v. Hassell,* 547 F.2d 1048, 1052 (8th Cir.1977).

In searching the present record for evidence of a conspiracy, we are guided by the definition contained in Iowa Code section 706.1(1)(b) (1991). That statute makes it a criminal conspiracy if, with the intent to facilitate commission of a crime, one "[a]grees to aid another in the planning or commission of the crime or of an attempt or solicitation to commit the crime." The district court could have found from the evidence before it that Teresa Miller's actions in engaging the undercover agent in conversation during her husband's absence were an effort to appease his dissatisfaction over the delay and soliciting him to remain at the Miller residence until the illegal sale of a controlled substance could be completed by her husband. Viewed in this light, the evidence is sufficient to support the court's allowance of the challenged hearsay statements by Teresa Miller as part of the proof of the criminal activity relied on by the State in seeking to forfeit appellant's automobile.

II. *Sufficiency of Evidence to Show That 1988 Oldsmobile Cutlass was Used to Facilitate the Commission of a Criminal Offense.*

■ The first issue concerning sufficiency of the evidence is whether the record sustains the district court's finding that the 1988 Oldsmobile Cutlass, which was forfeited to the State, had been used to facilitate the commission of a criminal offense. In order to sustain that conclusion, the State sought to prove that the motor vehicle in question had been used on April 23, 1992, to transport marijuana from some unknown site where Gad Scott obtained it to the location where Brian Miller's automobile was parked near the Scott residence. If the evidence supports the State's allegation that Melissa Scott's motor vehicle was used for that purpose, it clearly falls within the definition of forfeitable property. *See State v. Dykes,* 471 N.W.2d 846, 848 (Iowa 1991) (automobile

used to facilitate possession of drugs was properly forfeited).

The district court found that the State had established by a preponderance of evidence that marijuana was transported in the forfeited motor vehicle on the date alleged. It further found that the transportation was for purposes of aiding the sale to the undercover agent by Brian Miller. We conclude that these findings concerning the vehicle's use and the purpose of that use satisfy the requirement of *In re Kaster,* 454 N.W.2d 876 (Iowa 1990), that there be a "substantial connection between the [forfeited] property and the crime." *Id.* at 879.

In reviewing the record, we find more than enough evidence to support the district court's findings on these critical issues. The evidence clearly showed that Brian Miller's purpose in going to Gad Scott's residence was to obtain marijuana. The conduct of Gad Scott and Miller in quickly departing the Scott residence and returning some sixteen minutes later while the customer for the marijuana was waiting back at the Miller residence raises an inference that Brian Miller and Gad Scott had gone to some unspecified location to obtain the marijuana. The statements made by Brian Miller's wife, Teresa, that Gad Scott did not have marijuana at his residence is additional evidence of the purpose of the brief journey taken in Melissa Scott's automobile that evening.

The temporal proximity of the return of Melissa's automobile and Brian Miller's possession of the marijuana is further evidence that the illegal substance was obtained during the trip in the Oldsmobile Cutlass. In combination, the permissible inferences to be drawn from all of these circumstances furnish an adequate evidentiary foundation for the findings made by the district court concerning the use of the car to facilitate an illegal transaction.

III. *Sufficiency of Evidence Connecting Owner of Motor Vehicle to Alleged Criminal Activity.*

■ Finally, appellant seeks to defeat the forfeiture of her automobile by challenging the nexus between the alleged criminal activity and any act on her part. She begins by arguing that it was established in *In re Prop-*

*erty of Wagner,* 482 N.W.2d 160 (Iowa 1992), that, "[e]xcept in cases of a joint tenant, property cannot be forfeited as against the property's owner who had no part in the commission of the crime." *See id.* at 163. Unlike the present case, the forfeiture in *Wagner* did not involve property used to facilitate a criminal offense. It involved seized currency alleged to be the proceeds of criminal activity. The issue was when the State acquired title as against the claims of a levying judgment creditor of the person from whom the currency had been seized.

The language in the *Wagner* opinion on which appellant relies and that we have quoted above was only intended to indicate that owners who are totally disassociated from the alleged criminal activity have a right to challenge an attempted forfeiture of their property. This statement was not a complete description of the law governing such challenges. The applicable statute that establishes a basis for challenging a forfeiture by an owner of property provides that the property shall not be forfeited against the interest of an owner "who had no part in the commission of the crime *and* who had no knowledge of the criminal use or intended use of the property." Iowa Code § 809.14(1) (emphasis added). The use of the conjunction "and" in this context suggests that the owner, in order to avoid forfeiture, must not only have had no participation in the alleged crime but also must not have known that the property would be used for a criminal purpose.

Other language in section 809.14(1) provides that, if the circumstances are shown to be such that the owner should have known that the property was to be used for a criminal purpose, it may be inferred that the owner did know that this was the case. We believe that the inference that this language permits to be drawn is one that a court would be free to draw in the absence of an express statutory directive. Such an inference arises naturally from data founded upon common experience. *See Stenberg v. Buckley,* 245 Iowa 622, 627–29, 61 N.W.2d 452, 455–56 (1953) (inference of a fact may be drawn if arising naturally from common experience and knowledge of men); *Gilmer v. Neuen-*

*swander,* 238 Iowa 502, 506, 28 N.W.2d 43, 45 (1947) (same).

Melissa testified that she (1) was not aware that her automobile had ever been used for the transportation of illegal controlled substances, (2) had forbidden her husband to use the car, (3) had sought to control access to the keys to the car, and (4) was sleeping at the time her husband drove the car on the night in question. Given Melissa's interest in the outcome of the proceeding, the district court could legitimately have viewed her testimony with some skepticism. Evidence offered of statements attributed to Melissa at the time of the execution of the search warrant conflicts with her testimony at the forfeiture hearing. Those statements were admissions by a party to the proceeding and thus constitute substantive proof upon which the court might have based its findings concerning Melissa's knowledge of the intended use of her automobile by her husband.

We have recognized that in forfeiture cases the findings of the district court "[i]f supported by substantial evidence and justified under the law ... are binding on us and the judgment will not be disturbed on appeal." *In re Rush,* 448 N.W.2d 472, 477 (Iowa 1989). The possibility of drawing inconsistent conclusions from the same body of evidence does not prevent a finding from being supported by substantial evidence. *Id.* Applying these principles in the present case, we conclude that the evidence does sustain the district court's findings on the critical issues and that its judgment approving forfeiture of the automobile must be affirmed.

**AFFIRMED.**