**In the Matter of Property Seized from Keith Joseph WAGNER and Rachael A. Wagner,**

**Stacy Wagner, Appellee,**

**State of Iowa, Appellant.**

**No. 91–17.**

Supreme Court of Iowa.

March 18, 1992.

Corliss C. Baty, Maquoketa, for appellee.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Mark Joel Zbieroski, and Patrick J. Reinert, Asst. Attys. Gen., and Philip Tabor, County Atty., for appellant.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER and SNELL, JJ.

SCHULTZ, Justice.

The issue in this appeal concerns the ownership of currency seized by police from a drug dealer. The police department was garnished by a judgment creditor of the drug dealer after seizure of the currency but before the State gave notice of forfeiture. The trial court ruled that title to derivative contraband does not vest in the State by virtue of seizure alone, and that the creditor acquired a superior lien on the currency by garnishing the police department before the State filed notice of forfeiture. We disagree and reverse.

The facts were stipulated to by the parties. In 1988 in a dissolution decree, Stacy Wagner (Stacy) obtained a judgment for child support. This judgment against Keith Joseph Wagner (Keith) was in arrears on January 7, 1990, when Keith was arrested for drug dealing and the currency in question was seized from him and his present wife, Rachael A. Wagner (Rachael). On January 31, Stacy caused execution and garnishment to be served on the police department which was holding the seized currency, to garnish the funds belonging to Keith. The execution and garnishment were returned unsatisfied. On March 9,

the State commenced forfeiture proceedings on the currency. Keith and Rachael have made no claim to the currency.

Stacy appeared in the forfeiture proceeding, claiming that she had perfected a lien on the currency by her garnishment which occurred prior to the State's initiation of forfeiture proceedings. The trial court agreed with Stacy and ordered that the currency be delivered to Stacy in accordance with her January 31 execution and garnishment. The State appeals.

Our review of the trial court's ruling is for correction of errors at law. Iowa R.App.P. 4. As an initial matter, the State and Stacy agree that the seizure of the currency was lawful; the State is entitled to present possession of the currency; the currency is forfeitable property as defined in Iowa Code chapter 809 (1989); and Stacy was not involved in the criminal proceedings against Keith and Rachael. The parties' dispute is over the legal effect of the State's seizure of the currency.

The State maintains that its ownership interest in the seized currency vested on January 7, 1990, the date of seizure. Stacy urges that ownership of the currency could not vest in the State until March 9, 1990, when the State sent notice of forfeiture. Resolution of these conflicting claims depends upon interpretation of various code provisions in Iowa Code chapter 809 governing forfeitable property.

■■■ Although the forfeiture statutes in chapter 809 [1] are not criminal statutes, they are penal in nature and must be strictly construed. *In re Kaster*, 454 N.W.2d 876, 877 (Iowa 1990). However, we must construe forfeiture statutes with a goal of promoting and giving effect to the intention of the legislature. *Id.; see also State v. Ludtke*, 446 N.W.2d 797, 798 (Iowa 1989); *Kohrt v. Yetter*, 344 N.W.2d 245, 246 (Iowa 1984). In light of these principles of statutory interpretation, we examine the relevant statutory provisions.

■■■ The statutory provision most relevant to resolution of this case is Iowa Code section 809.6 which provides as follows:

Title to and responsibility for forfeitable property vests in the state at the time of seizure. Once forfeitable property is seized, no right to the property may be transferred by anyone other than the state unless the seizure and forfeiture is declared by the court to be a nullity. Property which may not legally be possessed is forfeited to the state by its seizure without further filing of a notice of forfeiture.

The phrase "[p]roperty which may not legally be possessed" contained in the last sentence of this section is a codified definition of contraband per se. *Ludtke*, 446 N.W.2d at 799–800. This sentence can be construed as automatically vesting title in contraband per se in the State at the time of seizure because no "further filing of a notice of forfeiture" is required. *See id.* at 800. Thus, the State need not perfect its ownership of contraband per se because no person can claim an ownership right in illegal property. *Id.*

■ In this case, the trial court concluded that section 809.6 deals solely with contraband per se. We cannot agree. Section 809.6 uses the term "forfeitable property" rather than contraband per se. A further indication of the legislature's intention that section 809.6 governs forfeitable property in addition to contraband per se is the section's provision that no person other than the State has the right to transfer seized forfeitable property except when "the seizure and forfeiture is declared by the court to be a nullity." Iowa Code § 809.6. The legislature certainly never intended to allow the transfer of contraband per se, or property that is illegal to possess such as controlled substances. Therefore, the inclusion of this exception in section 809.6 which allows transfer of seized forfeitable property can only apply to forfeitable property that is not contraband per se, or derivative contraband. Consequently, we conclude that section 809.6 applies to all seized forfeitable property, which includes both derivative contraband and contraband per se.

1. All references to the Iowa Code are to the 1989 edition.

■ In this case, the seized currency is not contraband per se; rather it is derivative contraband. *In re Property Seized on January 31, 1983*, 362 N.W.2d 565, 568 (Iowa 1985) (stating that United States currency is derivative contraband). We have defined derivative contraband as property that is "innocent in itself and generally lawful to possess but which may become contraband by its illegal use." *Ludtke*, 446 N.W.2d at 800.

■ Even though the plain language in section 809.6 indicates that the State has title to forfeitable property at the time of seizure, owners and lienholders claiming an interest in the property may assert their rights. The State is required to give notice of forfeiture to persons claiming rights to the property. Iowa Code § 809.8. A failure to give timely notice terminates the State's right of forfeiture. *Id.* § 809.8(2); *Ludtke*, 446 N.W.2d at 800. Except in cases of a joint tenant, property cannot be forfeited as against the property's owner who had no part in the commission of the crime. Iowa Code § 809.14(1). Holders of valid recorded liens have the right to purchase their property interest which was forfeited or to be reimbursed to the extent of their property interest. *Id.* § 809.14(2)– (3).

■ To assert ownership rights in seized property, owners and lienholders must show that their rights vested before the date of the State's seizure. The legislature provided that "no right to the property may be transferred by anyone other than the State unless the seizure and forfeiture is declared by the court to be a nullity." *Id.* § 809.6. We interpret the words "no right to the property may be transferred by anyone" in section 809.6 to include a prohibition against the imposition of a lien by a judgment creditor. Consequently, we believe the legislature intended that no new claims to seized property can be advanced against the State after the date of the State's seizure.

In this case, Stacy does not contend that she possessed a legal or equitable ownership right to the currency that existed prior to her January 31, 1990, garnishment ac-

tion. The trial court concluded that Stacy acquired a lien on the currency at the time she initiated garnishment proceedings on January 31, 1990, which was after the State's January 7 seizure of the currency. Even if we assume that Stacy acquired a lien by her January 31 garnishment action, the lien was too late. The lien was not acquired prior to the State's January 7 seizure of the currency; therefore, it did not give her any preseizure ownership claim to the currency.

The doctrine of relation back provides further support and justification for our conclusion that Stacy's claim to the currency was made too late. Recently, the Eighth Circuit explained the relation back doctrine as follows:

[W]henever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith.

*United States v. Thirteen Thousand Dollars in United States Currency*, 733 F.2d 581, 583–84 (8th Cir.1984) (quoting *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555, 559 (1890)). The validity of the relation back rule has been reaffirmed in many Supreme Court decisions. *See* cases cited David B. Smith, *Prosecution and Defense of Forfeiture Cases* § 3.05[2] n. 3 (1985). The practical effect of the relation back doctrine cuts off the after-acquired rights of innocent third parties, such as assignees, bona fide purchasers, secured creditors, competing state or federal tax authorities, finders of abandoned property, and tort victims in property subject to forfeiture. *Id.* § 3.05[5][a]. As we reasoned previously, if Stacy did

acquire a lien on the currency, it was an intermediate alienation that occurred between the date of the State's seizure and the date of the State's perfection of its title to the currency. Since Stacy had no preseizure ownership right to the currency, the relation back doctrine operates to cut off any postseizure rights that Stacy may have acquired by her garnishment action.

In sum, for the reasons discussed previously, we believe that legislative intent and the plain language of Iowa Code section 809.6 give the State ownership rights to seized forfeitable property at the time of seizure, provided the State complies with the statutory forfeiture procedures in Iowa Code chapter 809. In this case, the State gave timely notice of forfeiture in compliance with Iowa Code section 809.8(2). There was no showing that the seizure and forfeiture proceedings were declared a nullity by a court. Therefore, we conclude that the State's seizure of the currency placed it first-in-line to perfect its title to the currency.

In conclusion, our legislature has indicated that title to derivative contraband relates back and vests in the State at the time of seizure. Subject to perfection, title vested in the State on the date of seizure, January 7, 1990, prior to Stacy's January 31, 1990, garnishment of the seized property. Stacy cannot show a legal or equitable ownership interest in the seized currency that existed at or before the time of seizure. Consequently, the State's ownership right is superior to Stacy's garnishment action and the State is entitled to perfect that ownership right pursuant to the statutory forfeiture proceedings in Iowa Code chapter 809.

For these reasons, the trial court's order transferring the seized currency in the amount of $2,632 to Stacy should be reversed and the currency forfeited to the State of Iowa.

REVERSED.

All justices concur except SNELL, J., who dissents.

SNELL, Justice (dissenting).

I respectfully dissent. The majority has broadly construed our forfeiture law elevating the state's claim to ownership of derivative contraband above the rights of innocent third persons who have no connection with a violation of the controlled substance laws. In this case, a divorced wife of the defendant is deprived of her right to collect past due child support under a valid judgment by the state's claim to cash seized from defendant in a drug raid. The reason approved by the majority is that the police took possession of defendant's cash before she could garnish it to pay the money owed for child support.

The majority makes reference to our principles that forfeiture statutes are not penal in nature and must be strictly construed. Its analysis, however, proceeds without any reasoning based on strict construction but instead rests on a perceived legislative intent to give the state ownership rights above all other persons from the moment it seizes defendant's cash. The embracing of the doctrine of "relation back" for support is a startling example of losing track of these guiding principles.

Forfeiture proceedings are commenced when a notice of forfeiture is filed by the county attorney or attorney general. Iowa Code § 809.8. Until then the state possesses seized property but has not asserted a claim of forfeiture under law. Even after the state claims the property by a notice of forfeiture, the legislature has clearly made the state's claim subject to divestment by further court proceedings.

A hearing must be held to decide the priority of other claims to the property and for return of the property, if demanded. Iowa Code § 809.9. Title is finalized in the state only by a court's finding that the property is forfeitable, which is reviewable on appeal. Iowa Code §§ 809.11 and 809.-12.

Section 809.10(3) provides: "Upon a finding by the court that the property is forfeitable, the court may as a matter of equity enter an order transferring title in the property to the state." The legislature recognizes by this statute that equitable prin-

ciples are important even in forfeiture proceedings and that the proceedings for forfeiture are completed only upon a finding by the court that the property is forfeitable.

Section 809.14 sets out rights of lienholders. Subsection three of 809.14 states: "The validity of a lien or property interest is determined as of the date upon which property becomes forfeitable." I believe a proper construction of section 809.14 is that the property "becomes forfeitable" when the county attorney or attorney general claims it by filing a notice of forfeiture. Iowa Code § 809.8. Since Stacy established her lien through the garnishment proceedings prior to the filing of the notice of forfeiture, the lien should be deemed valid and superior to the state's right to the money. This construction carries out the purpose of the forfeiture statutes, protects the rights of innocent persons and is faithful to our principles of statutory construction.

The majority's construction of section 809.6 rivets attention on the words "rests in the state at the time of seizure" but fails to consider the words "forfeitable property" in the same sentence. "Forfeitable property" is such when a notice of forfeiture is filed; until then it has not been legally declared forfeitable by any authority; it has merely been seized and lawfully possessed by the state subject to a decision by the county attorney or attorney general to petition the court for its forfeiture. The majority's construction changes the statutory language in section 809.6 from "forfeitable property" to "forfeited property."

Section 809.6 has a readily discernible purpose that promotes the destruction of illegal drug trafficking that has been a scourge on our society. That purpose is to prevent the alleged seller of illegal drugs from transferring title to the seized property and thereby defeating the state's claim. Clearly, section 809.6 is designed to insure that neither convicted criminals nor their would-be donees profit from ill-gotten wealth. The statute prevents a transfer "by anyone" not "to anyone" other than the state. This laudable policy does not, however, apply to the wrongdoer's legitimate, preseizure creditors. No reference is made in section 809.6 to innocent third persons, nor were their rights intended to be scuttled. As against these individuals, the state's claim to the confiscated wealth is clearly subordinate.

Not incognizant of these equities, the legislature has vested title to forfeitable property as against the defendant in the state as of the time of physical seizure. However, the statute also provides that this title may thereafter be transferred by the state. One such mode of transfer would necessarily include garnishment. These state transfers effected by the judiciary would deny criminals the fruits of their misdeeds, while at the same time allow worthy creditors to satisfy their judgments.

In the case at bar, Stacy attempted to collect her child support by execution and garnishment of the cash held by the police on January 31, 1990. The state did not commence forfeiture proceedings until March 9, 1990. Not until March 9, 1990, did the state declare the cash "forfeitable property." Stacy's claim and legal right to the cash was clearly superior to that of the state's, which is supported only by its right of possession.

The trial court was correct in its careful analysis of our forfeiture law and should be affirmed.