ROBERT S. LEIGHTON v. CITY OF MINNEAPOLIS AND OTHERS.[1]

December 6, 1946.

No. 34,301.

[1]Reported in 25 N. W. (2d) 267.

See, Leighton v. City of Minneapolis, 222 Minn. 516, 25 N. W. (2d) 263.

*Walter P. Wolfe* and *Child & Child,* for appellant.

*R. S. Wiggin,* City Attorney, and *Carsten L. Jacobson* and *John F. Bonner,* Assistant City Attorneys, for respondent City of Minneapolis.

*Frank J. Williams* and *Edward J. Shannon,* Assistant County Attorneys, for respondents Al P. Erickson and George A. Totten, Jr., as County Auditor and County Treasurer of Hennepin County.

*Abbott L. Fletcher, Paul J. Thompson,* and *Howard I. Moore,* for respondent Board of Park Commissioners.

LORING, CHIEF JUSTICE.

This action was brought by a taxpayer and freeholder against the city of Minneapolis, the auditor and the treasurer of Hennepin county, and the board of park commissioners of the city, in behalf of plaintiff and all others similarly situated, for a declaratory judgment to determine whether L. 1945, c. 486, violates Minn. Const. art. 4, §§ 33, 34, and 36. The act authorizes and empowers each city of the first class of the state now or hereafter having a population of 450,000 inhabitants or more, and now or hereafter brought under a home-rule charter, to levy annually on real and personal property of said city a tax not exceeding one and one-half mills on each dollar of the assessed valuation of said city for the "purpose of acquiring, equipping, maintaining, operating and governing playgrounds and other recreational facilities and conducting recreational programs throughout said City for the public use as a part

of the system of parks and parkways of said City, * * *." The act requires the imposition of that tax to be made through the city council or chief governing body and its board of park commissioners. Defendants answered, asserting the validity of c. 486 and that classification of cities therein is a valid classification, setting forth, among other things, the greater proportional expense and necessity therefor which exist in cities of that classification over that which exists in smaller cities.

The case was tried by the court, which made findings of fact and conclusions of law in favor of defendants. From the judgment entered, plaintiff has appealed.

The case presents for decision the same questions that were presented to this court in the companion case of Leighton v. City of Minneapolis (No. 34,212), 222 Minn. 516, 25 N. W. (2d) 263. All of those questions, except whether population is germane to the subject matter or purposes of this act, are disposed of by the discussion in the companion case. The sole question remaining for decision here is, therefore, whether the classification of cities of 450,000 inhabitants is a classification germane to the subject matter and purposes of the act. The court took considerable evidence and made findings with reference to the matter of classification. It found:

"V.

"* * * That the census report of the United States for the year 1942 shows that the per capita expense of the activities described in said Chapter 486 are much larger in the cities of 450,000 or more inhabitants than in smaller cities, and such expense increases with the size of the city and with the density of population. That said census figures show that all per capita cost of city government increases as the size of the city increases. The court finds that the density of population per square mile in Minneapolis is one and two-thirds times that of St. Paul and five times that of Duluth, St. Paul and Duluth being the other two cities of the first class as described in Section 36, Article 4 of the Constitution. That at the time said Section 36 was adopted, Duluth's population was less

than 50,000 inhabitants. That the need for recreational facilities increases with the size of the city and the resulting increase in density of population.

## "VI.

"That the tax base in Minneapolis has decreased from $330,-858,640.00 in 1932 to $266,820,368.00 in 1945 when the act was passed. The court finds from the evidence submitted that the labor cost of the Park Board of the City of Minneapolis increased from 68¾c per hour in 1932 to 96½c per hour in 1945, and that the rate has been set at $1.05 per hour for 1946, and the labor cost represents over seventy percent of the entire cost of operating the recreational activities of the City of Minneapolis. That the population of Minneapolis increased from 464,356 in 1930 to 492,370 in 1940, and that the population in 1945, assuming the rate of increase for the last ten years was continued and allowing nothing for the increase in population due to war production, was approximately 497,500.

## "VII.

"The court finds that there has been an increasing demand during the years since World War I for more recreational facilities. That many petitions from various parts of the city have been presented to the Board of Park Commissioners asking for additional playgrounds and more recreational facilities, a large number of which have had to be denied for lack of funds. There was some evidence introduced as to the increase in the amount of juvenile delinquency.

## "VIII.

"From the testimony presented, and from two important surveys made a considerable number of years apart, the last one being in 1944, it appears that the main activity and practically the only activity of the Board of Park Commissioners is various forms of recreation. That the general park fund arising from a levy of one and one-half mills, which is authorized by the charter, in addition to the amount authorized by the law in question, has in

recent years all been used for maintaining recreational activities, and the recreational facilities in the City of Minneapolis, and that due to the decreasing tax base, the increase in population, and the increase in labor cost, The City of Minneapolis has had in effect less and less funds to take care of more and more people with the result that in recent years there has had to be a radical curtailment of service to the public in maintaining recreational facilities and supervision thereof.

"IX.

"There are twenty-two lakes and lagoons in the City of Minneapolis, the waters and shorelines of which have all been taken into the park system of the City of Minneapolis, except part of the shorelines of Cedar Lake, and the Park Board has maintained recreational activities on the shores and on the lakes as far as its funds will permit.

"X.

"It therefore appears from the facts proven in this case and by the facts of which the court will take judicial notice that the reasonable demand of the citizens of said city for increased recreational facilities cannot be furnished by the said Board of Park Commissioners, and that each year the Park Board has less and less money to carry on the said activities with the continued demand for more and more of the same, * * *."

These findings are not challenged as unsupported and could not be attacked here, because there is no settled case. We would take judicial notice of substantially all of them. It is too obvious to require discussion that the facts as found by the trial court are amply sufficient to sustain the classification made by the legislature.

The judgment is affirmed.