# IN THE SUPREME COURT OF IOWA

No. 22–0917

Submitted January 23, 2024—Filed June 14, 2024

**RON MYERS,**

      Appellee,

vs.

**CITY OF CEDAR FALLS,**

      Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Joel Dalrymple, Judge.

A city seeks further review of the court of appeals decision reversing the district court's summary judgment dismissing tort claims arising from a diving board accident under Iowa Code section 670.4(1)(*l*). **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield, McDermott, and May, JJ., joined. McDonald, J., filed a special concurrence. Oxley, J., filed a special concurrence.

Thomas J. Duff (argued) and Jim T. Duff of Duff Law Firm, P.L.C., West Des Moines, for appellant.

Samuel C. Anderson (argued) of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

**WATERMAN, Justice.**

In this appeal, we revisit the "criminal offense" exception to immunity for operators of municipal swimming pools under Iowa Code section 670.4(1)(*l*) (2019). The plaintiff injured his leg when he slipped on a diving board at a city pool. He sued the City of Cedar Falls, alleging that the diving board lacked a slip-resistant surface required by state regulations, which constitutes a criminal offense under *Sanon v. City of Pella*, 865 N.W.2d 506, 514–15 (Iowa 2015), defeating the City's statutory immunity. The City moved for summary judgment under section 670.4(1)(*l*), which the district court granted, concluding that the plaintiff failed to establish a "knowing" violation of the regulations. The plaintiff appealed. We transferred the case to the court of appeals, which reversed based on its determination that fact questions as to the condition of the board precluded summary judgment. We granted the City's application for further review.

On our review, we accept the City's invitation to overrule *Sanon* because it was egregiously wrong when decided, as explained in its three-justice partial dissent, *see id.* at 518–28 (Waterman, J., concurring in part and dissenting in part, joined by Cady, C.J., and Mansfield, J.), and it continues to cause problems to this day. Moreover, recent legislative enactments combining state agencies further enhance the problems resulting from *Sanon*'s erroneous holding that violations of agency regulations promulgated under one statute are criminal offenses under another statute, thereby undermining certain immunities enacted by the legislature. Our holding today restores the scope of the statutory immunity and honors the legislature's exclusive role in defining criminal offenses. We therefore vacate the court of appeals decision and affirm the district court's summary judgment.

## I. Background Facts and Proceedings.

Forty-nine-year-old Ron Myers and his family traveled to The Falls Aquatic Center in Cedar Falls on July 19, 2019. This was a regular summer activity for the Myers family, as they typically visited swimming pools four or five times a week. Myers jumped off the one-meter diving board at The Falls twice that day without incident. On his third jump, Myers attempted to "get some distance" to perform a "can opener" jump and "make a big splash." Starting from the back of the diving board, Myers jogged to the front end and planted his feet, intending to launch himself into the air. His jump failed. His left foot slipped off while his right foot remained on the board and his knee bent backwards, rupturing his quadriceps tendon. Myers fell into the water. He exited the pool unassisted and sat on a bench where lifeguards offered assistance. The next day, Myers underwent surgery to repair his tendon.

The Falls, owned and operated by the City, first installed this sixteen-foot-long Duraflex diving board in 2013, before the summer swim season. The diving board, when purchased and installed, was "coated with a slip-resistant surface." Over the diving board's seven seasons of use, it had never been resurfaced. No complaints had been reported to management about the slipperiness of the diving board before Myers's accident.

The Falls's recreation supervisor, Chris Schoentag, was responsible for maintaining The Falls's facilities. He removed the diving boards at the end of each season. Staff cleaned the diving boards before reinstallation, using water and a nylon-bristled brush. After inspecting each diving board for any cracks, deformities, or grit, Schoentag reinstalled the board the following season. He used his "best judgment" during his inspections, as he was not aware of a standard method for determining adequate board-surface friction. Schoentag

testified that the diving board had a safe, slip-resistant surface at the time of Myers's accident.

The Cedar Falls recreation and community programs manager, Bruce Verink, oversaw Schoentag's removal and reinstallation of the diving boards. He inspected the boards along with Schoentag. Using his own experience, Verink examined the surface of each diving board to determine whether it had "enough grit to hold the feet and keep them from sliding on the board." He opined in his deposition testimony that the board used by Myers had a slip-resistant surface.

The Black Hawk Health Department (BHHD), an inspection agency for the Iowa Department of Public Health (IDPH),[1] as defined in Iowa Code section 135I.1(2) and Iowa Administrative Code rule 641—15.3(1), conducted an annual inspection of the entire facility. One month before Myers's accident, the BHHD inspected The Falls and provided its inspection report to the City. The report found no deficiencies with any of the diving boards—including the one that Myers later used. In fact, The Falls has never been cited for a deficiency in its diving boards nor cited for a violation of a safety or regulatory rule relating to its diving boards.

In October 2020, Myers filed this civil action against the City to recover damages for his injuries. Myers alleged that the City was negligent in failing to provide a slip-resistant surface on the diving board, failing to maintain the diving board in a proper condition, and failing to correct or remove the dangerous conditions on the diving board. These failures, he claimed, violated Iowa

---

[1]As discussed later in this opinion, the IDPH and several other departments were realigned into the Iowa Department of Health and Human Services (HHS) on July 1, 2023. We will refer to the department as the IDPH in this opinion, as it was known at the time of Myers's accident.

Administrative Code rules 641—15.4(4)(*c*)(6) and 641—15.5(13)(*a*)(5), constituting a crime of a simple misdemeanor under Iowa Code section 135.38.

The parties undertook discovery, including depositions. Myers served the City with an expert report from Tom Griffiths, a water safety specialist with over forty years of experience. Griffiths identified several actions and inactions by the City that he claimed constituted negligence, including its "[u]se of an inappropriate and unsafe competitive Duraflex diving board in a recreational swimming pool with untrained users," failure to conduct regular maintenance and cleaning of the diving board's surface, and failure to replace or resurface the diving board. Based on photographs of the diving board, Griffiths opined that "the take-off area of the incident diving board was smooth rather than rough and non-slip as it should have been." He concluded that the "staff at The Falls . . . clearly could have and should have known this."

The City moved for summary judgment on two grounds: (1) the diving board did have a slip-resistant surface, and (2) the City is immune from liability under Iowa Code section 670.4(1)(*l*) because "there is no evidence that there was any act or omission by an officer or an employee of the municipality which constitutes a criminal offense" that would defeat its statutory immunity.

Myers resisted, arguing that Griffiths's report generated a genuine question of material fact whether the City violated the regulations requiring diving boards to "have a slip-resistant surface." Iowa Admin. Code r. 641—15.4(4)(*c*)(6); *see also id.* r. 641—15.5(13)(*a*)(5) ("Diving boards and platforms shall have slip-resistant surfaces."). Relying on *Sanon*, Myers argued that by violating those regulations, the City waived its immunity under section 670.4(1)(*l*) because the violations constituted a criminal offense under section 135.38.

The district court granted summary judgment to the City based on section 670.4(1)(*l*), concluding that even if a violation of these regulations was a criminal offense, Myers could not establish that an employee of the City *knowingly* violated the regulations. It was undisputed that the diving board was slip-resistant when installed, and the court noted that the regulations lack criteria "to determine any measurable level of slip resistance necessary to remain compliant." The court also noted the IDPH and the BHHC never gave notice to the City that its diving board lacked an adequate slip-resistant surface. The district court concluded: "Absent a showing that an officer or employee of the city knowingly violated a regulation as to constitute a crime, the city's claim of immunity must prevail."

Myers appealed, arguing fact questions precluded summary judgment as to the board's condition and the City's constructive notice of rule violations that would defeat its immunity under *Sanon*. The City argued that the district court correctly determined there was no evidence its employees knowingly violated the regulations, leaving the City entitled to immunity as a matter of law. The City argued in the alternative that *Sanon* should be overruled. We transferred the case to the court of appeals. The court of appeals viewed compliance with the regulations as a binary inquiry: "[e]ither the board had a slip-resistant surface or it didn't." The court of appeals concluded that if the diving board lacked a slip-resistant surface, then the City violated the regulation and lost its immunity. Because of the conflicting evidence about the diving board's surface, the appellate panel determined that there was a disputed fact "that need[ed] to be resolved through the trial process." The court of appeals reversed the summary judgment and remanded the case for trial.

We granted the City's application for further review.

## II. Standard of Review.

"We review summary judgment rulings for correction of errors at law." *Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 346 (Iowa 2023) (quoting *Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 800 (Iowa 2019)). "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Id.* (quoting *Slaughter*, 925 N.W.2d at 800). "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015).

## III. Analysis.

The City argued, and the district court agreed, that the statutory immunity applied because there was no evidence that any City pool employee *knowingly* violated the regulations. The court of appeals determined that fact questions as to the diving board's condition precluded summary judgment. Neither court could overrule *Sanon.* Both courts were bound to apply it and reached conflicting conclusions, illustrating the problems resulting from *Sanon*'s flawed analysis that a mere regulatory violation constitutes a criminal offense defeating a legislatively enacted immunity. We bypass the problematic fact-bound determination of whether a knowing regulatory violation occurred here,[2] and we

---

[2]As the court of appeals observed, there was conflicting evidence on the slipperiness of the diving board. Questions of the actual or constructive knowledge of the City's pool employees are poorly suited for summary adjudication. *See, e.g., Wieseler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 451–52 (Iowa 1995) (noting that "we have commonly held that fact questions existed for a jury" in premises liability cases involving falls attributed to slippery conditions, and holding that "it would be reasonable for a jury to conclude that the hospital should have realized the hidden danger presented to persons venturing into the lot where slippery conditions *could* be present"). We are not persuaded by our specially concurring colleague's conclusion that the regulations mandating a slip-resistant surface on diving boards are void for vagueness without specific criteria for determining compliance. People are generally familiar with ubiquitous

instead overrule *Sanon* as egregiously wrong when decided. "The course we must follow is not to ignore our mistakes, but to correct them." *State v. Kilby*, 961 N.W.2d 374, 378 (Iowa 2021) (quoting *State v. Williams*, 895 N.W.2d 856, 867 (Iowa 2017)).

We begin with the controlling statute—the Iowa Municipal Tort Claims Act (IMTCA). "Suits against the government may be maintained only to the extent immunity has been expressly waived by the legislature." *Baker v. City of Ottumwa*, 560 N.W.2d 578, 583 (Iowa 1997). The IMTCA, in 2019, included seventeen separate immunity provisions. *See generally* Iowa Code § 670.4(1)(*a*)–(*q*). Relevant here, local governments enjoy immunity from tort liability for accidents at swimming pools that are subject to safety inspections under chapter 135I:

> 1. The liability imposed by section 670.2 shall have no application to any claim enumerated in this section. As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability.
>
> . . . .
>
> *l.* A claim relating to a swimming pool or spa as defined in section 135I.1 which has been inspected by a municipality or the state in accordance with chapter 135I, or a swimming pool or spa inspection program which has been certified by the state in accordance with that chapter, whether or not owned or operated by a municipality, *unless the claim is based upon an act or omission of an officer or employee of the municipality and the act or omission constitutes actual malice or a criminal offense.*

---

sandpaper-like slip-resistant surfaces on bathtubs, stairs, and diving boards. The City employees and Myers's expert can tell whether a bare foot readily slips on a wet diving board that has lost some of its textured, grainy surface. The approach of that special concurrence risks undermining enforcement of the regulations and risks calling into question whether a variety of criminal laws are void for vagueness. *See generally State v. Showens*, 845 N.W.2d 436, 446–48 (Iowa 2014) (discussing examples of laws challenged for vagueness).

*Id.* § 670.4(1)(*l*) (emphasis added).[3] This statutory scheme promotes pool safety through regular inspections by inspectors empowered to close pools for noncompliance with regulations. *See id.* § 135I.6. It is undisputed that the City's pool is subject to annual certified safety inspections under chapter 135I, so section 670.4(1)(*l*) applies. The fighting issue today, and in *Sanon,* is the scope of its exception for a criminal offense.[4]

The legislature enacted section 670.4(1)(*l*) "to foster community recreational activities and water safety training."[5] *Baker*, 560 N.W.2d at 582; *see also Sanon,* 865 N.W.2d at 522 (noting that the purpose of the immunity provision "is to reduce the litigation risk inherent in aquatic recreation and thereby encourage cities, counties, and schools to open and operate swimming pools"). "Summary judgment is an important procedure in statutory immunity cases because a key purpose of the immunity is to avoid costly litigation, and that legislative goal is thwarted when claims subject to immunity proceed to trial." *Nelson,* 867 N.W.2d at 7. *Sanon* undermined that purpose by erroneously expanding the exception for a "criminal offense" to include regulatory violations of chapter 135I.

It is well settled that the term "criminal offense" means "conduct which is prohibited by statute and is punishable by fine or imprisonment." *In re Prop. Seized from Kaster,* 454 N.W.2d 876, 878 (Iowa 1990) (en banc). Unelected

---

[3]This immunity provision was numbered section 670.4(12) at the time of the accident in *Sanon* and was subsequently renumbered as section 670.4(1)(*l*). *See* 2013 Iowa Acts ch. 30, § 196.

[4]Myers does not allege any City employee acted with actual malice.

[5]The dearth of public swimming pools, exacerbated by pool closures due to high operating costs, has contributed to a crisis in drowning deaths, especially among children, as fewer learn to swim or swim in unprotected rivers and lakes when safer public pools are unavailable. *See* Mary C. Curtis, *America's Deteriorating Public Pools Are a Public Health Crisis*, Slate (Aug. 5, 2023, 10:00 AM), https://slate.com/human-interest/2023/08/public-pools-closed-swimming-drowning-public-health-crisis-climate-change.html [https://perma.cc/4XWD-YQBP].

bureaucrats ordinarily do not get to enact criminal laws. *See State v. Watts*, 186 N.W.2d 611, 614 (Iowa 1971) ("Only the legislature has the power to create and define crime . . . ."); *see generally King v. Burwell*, 576 U.S. 473, 498 (2015) ("In a democracy, the power to make the law rests with those chosen by the people."). The "legislature may render the violation of an agency's rules a criminal offense" only when expressly provided by the statute authorizing the agency's rules. *Watts*, 186 N.W.2d at 614. The legislature did not make violating swimming pool regulations promulgated under chapter 135I a criminal offense, as the *Sanon* partial dissent recognized. *See* 865 N.W.2d at 521.

Myers relies on Iowa Code section 135.38—the same provision relied on in *Sanon*—to argue that the City's pool employees committed a criminal offense. *See id.* at 511–12 (majority opinion). Section 135.38 provides: "Any person who knowingly violates any provision of *this chapter*, or of the rules of the department, or any lawful order, written or oral, of the department or of its officers, or authorized agents, shall be guilty of a simple misdemeanor." Iowa Code § 135.38 (emphasis added). Relying on *Sanon*, Myers argues that the City's alleged violation of the two regulations governing slip-resistant surfaces—Iowa Administrative Code rules 641—15.4(4)(*c*)(6) and 641—15.5(13)(*a*)(5)—erases the City's immunity, as each violation of the regulations constitutes a simple misdemeanor under section 135.38. *See Sanon*, 865 N.W.2d at 508, 512–15 (concluding that the violation of specific pool regulations on lighting and water clarity promulgated by the IDPH constituted criminal offenses removing the city's immunity). But both Myers and the *Sanon* majority are incorrect.

*Sanon* rests on a false premise—that section 135.38 applies to and criminalizes violations of pool regulations promulgated under chapter 135I, defeating the statutory immunity simultaneously enacted by the legislature in section 670.4(1)(*l*). *See id.* at 514–15. The *Sanon* majority went awry when it

concluded that the IDPH's swimming pool regulations were promulgated under chapter 135. *See id.* at 514. To the contrary, the pool regulations were promulgated under a separate chapter, 135I, which governs the IDPH's regulation of swimming pools. *See id.* at 521 (Waterman, J., concurring in part and dissenting in part). In the same bill enacting the immunity provision in Iowa Code section 670.4(1)(*l*), the legislature enacted chapter 135I, entitled, "Swimming Pools and Spas." *See* 1989 Iowa Acts ch. 291, §§ 1–6 (codified at Iowa Code ch. 135I (Supp. 1989)); *id.* § 8 (originally codified at Iowa Code 613A.4(12) (Supp. 1989), now codified at Iowa Code § 670.4(1)(*l*) (2019)). Chapter 135I authorizes the IDPH to promulgate rules regulating swimming pools. *See* Iowa Code § 135I.4(5) ("The department is responsible for . . . regulating the operation of swimming pools . . . [and] [t]he department may . . . [a]dopt rules in accordance with chapter 17A for the *implementation and enforcement of this chapter* . . . ." (emphasis added)). Chapter 135I includes a penalty provision: "A person who violates a provision of this chapter commits a simple misdemeanor." *Id.* § 135I.5. Notably, the governing statute, section 135I.5, criminalizes only violations of that statute, not violations of rules promulgated under chapter 135I. *See id.*; *see also Sanon,* 865 N.W.2d at 519, 521.

"[L]egislative intent is expressed by omission as well as by inclusion of statutory terms." *Oyens Feed & Supply, Inc. v. Primebank,* 808 N.W.2d 186, 193 (Iowa 2011) (alteration in original) (quoting *Freedom Fin. Bank v. Est. of Boesen,* 805 N.W.2d 802, 812 (Iowa 2011)). "When the legislature selectively places language in one section and avoids it in another, we presume it did so intentionally." *Sanon,* 865 N.W.2d at 521. Here, the legislature expressly criminalized rules promulgated under chapter 135 in section 135.38 but chose not to include that language in section 135I.5. "The legislature knows how to criminalize violations of the department's rules. . . . If the legislature wanted to

criminalize violations of pool regulations, it would have said so in section 135I.5. It did not." *Id.* at 521–22. Thus, section 135I.5's specific penalty provision governs here over section 135.38's general provision. *See* Iowa Code § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision.").

The *Sanon* majority further erred by concluding that "the rules of the department" referenced in section 135.38 include "any rules the department issues, not only under chapter 135 but also any other chapter administered by the department." 865 N.W.2d at 519; *see also* 865 N.W.2d at 513–15 (majority opinion). This created a bigger problem because "each relevant, subsequent chapter [after chapter 135] contains its own penalty provision, and the majority's interpretation of section 135.38 results in redundancies and conflicts between the statutes." *Id.* at 519–20 (Waterman, J., concurring in part and dissenting in part). The partial dissent in *Sanon* identified some of the resulting conflicts:

> For example, Iowa Code chapter 136C governs radiation machines and radioactive materials and is administered by the department. Section 136C.4 provides that a violation of a department rule is a serious misdemeanor, while under section 135.38 it would merely be a simple misdemeanor. Chapter 136D governs tanning facilities and authorizes the department to adopt rules. Iowa Code § 136D.7. The penalty provision, section 136D.9, allows only a civil penalty for violating the department's rules, while the majority's interpretation of section 135.38 adds a criminal misdemeanor penalty. We could avoid these conflicts between the statutes by construing the penalty provision in each chapter to apply to rules promulgated by the department under that chapter.

*Id.* at 520 (footnote omitted). Our canons of statutory interpretation counsel us to avoid interpretations that create conflict and instead adopt interpretations that are harmonious. *See State v. Boone*, 989 N.W.2d 645, 649–50 (Iowa 2023)

("We read statutes as a whole, meaning we look beyond the isolated words and phrases to obtain a construction that is in harmony with surrounding provisions."); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). These conflicts between the statutes are avoided when section 135.38 is properly read to apply only to regulations promulgated under that chapter.

The number of statutory conflicts created by *Sanon*'s misinterpretation of section 135.38 increased exponentially last year when the legislature merged the IDPH with the Iowa Department of Human Services (DHS) and other departments, forming the Iowa Department of Health and Human Services (HHS).[6] When *Sanon* was written, it effectively criminalized any knowing violation of an IDPH regulation or order. *See* 865 N.W.2d at 514–15 (majority opinion). Because of the merger, any knowing violation of an HHS rule or "lawful order, written or oral, of the department or of its officers, or authorized agents" could now be a crime. Iowa Code § 135.38. So if a parent disobeys the instruction of an HHS caseworker, they may have committed a crime. That is astonishingly broad . . . and wrong. And it is a new and compelling reason to overrule *Sanon*.[7]

---

[6] *See* 2022 Iowa Acts ch. 1131, § 51 (creating HHS, transitioning DHS and IDPH into HHS, and setting a timeframe for the transition to take place—"beginning July 1, 2022, and ending June 30, 2023"). *See generally* 2023 Iowa Acts ch. 19 (implementing the changes to transition DHS and IDPH into HHS). *See, e.g., id.* ch. 19, § 125 (to be codified at Iowa Code § 135.1 (2024)) (changing chapter 135's governing department from IDPH to HHS).

[7] Under the 2023 realignment of state departments, pool inspection duties in chapter 135I were transferred to the Iowa Department of Inspections, Appeals, and Licensing. *See* 2023 Iowa Acts ch. 19, § 1618 (codified at Iowa Code § 135I.1). Section 135I.1(1) now defines "department," as used in chapter 135I, as "the department of inspections, appeals, and licensing." Iowa Code § 135I.1(1) (2023). Iowa Code section 135I.4 states that "[t]he department is responsible for registering and regulating the operation of . . . swimming pools." And the department may "[a]dopt rules in accordance with chapter 17A for the implementation and enforcement of this chapter." *Id.* § 135.4(5). Thus, swimming pools are no longer regulated by the same department as chapter 135 (now HHS). These legislative amendments further undermine *Sanon*.

*C.f. Youngblut v. Youngblut*, 945 N.W.2d 25, 45 (Iowa 2020) (McDonald, J., dissenting) (looking to new legal developments to determine whether we should continue to adhere to an erroneous precedent).

*Sanon* was egregiously wrong when it was decided, and it persists in creating problems today. "[S]tare decisis does not prevent the court from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest, including error in the interpretation of statutory enactments." *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 50 (Iowa 2024) (quoting *McElroy v. State*, 703 N.W.2d 385, 395 (Iowa 2005)); *see also State v. Liddell*, 672 N.W.2d 805, 813 (Iowa 2003) ("Stare decisis 'should not be invoked to maintain a clearly erroneous result.' " (quoting *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000) (en banc))). Because *Sanon* "proceed[ed] upon a wrong principle, [was] built upon a false premise, and arriv[ed] at an erroneous conclusion," stare decisis does not prevent us from overturning this clearly erroneous precedent. *Miller*, 606 N.W.2d at 306 (alterations in original) (quoting *Stuart v. Pilgrim*, 74 N.W.2d 212, 216 (Iowa 1956)). "[W]e see no need to further muddy the waters . . . by perpetuating [*Sanon*'s] errors." *Vaudt*, 4 N.W.3d at 55.

Myers argues that even if *Sanon* was incorrectly decided at the time, the legislature has acquiesced in its interpretation, noting recent amendments to Iowa Code section 670.4 that left intact section 670.4(1)(*l*) while adding new immunity provisions.[8] We disagree that legislative acquiescence precludes overruling *Sanon.* "[T]he principles of stare decisis and legislative acquiescence in combination 'are not absolute,' and we may overrule prior decisions 'when

---

[8]*See* 2018 Iowa Acts ch. 1126, § 2 (codified at Iowa Code § 670.4(1)(*q*) (2019)) (adding immunity for beehives); 2020 Iowa Acts ch. 1027, § 3 (codified at Iowa Code § 670.4(1)(*r*) (2021)) (adding immunity for claims arising from use of firefighting equipment); 2021 Iowa Acts ch. 183, § 14 (codified at Iowa Code § 670.4A (2022)) (qualified immunity).

error is manifest, including error in the interpretation of statutory enactments.' " *Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 61 (Iowa 2017) (quoting *McElroy*, 703 N.W.2d at 395). We recently overruled precedent interpreting a statute in *Vaudt v. Wells Fargo Bank, N.A.*, despite more than two decades of legislative acquiescence. *See* 4 N.W.3d at 54–55. "[T]he mere fact that a legislature *could* take action 'is no excuse for failing to overrule a statutory precedent of ours that is clearly wrong, for the realities of the legislative process often preclude readopting the original meaning of a statute that we have upset.' " *State v. Montgomery*, 966 N.W.2d 641, 663 (Iowa 2021) (McDermott, J., concurring specially) (quoting *Clark v. Martinez*, 543 U.S. 371, 402 (2005) (Thomas, J., dissenting)). We hereby overrule *Sanon*.

Without *Sanon,* there is no basis for finding a criminal offense based on violations of these IDPH department rules. We hold that the City is immune from liability under Iowa Code section 670.4(1)(*l*).

## IV. Disposition

For those reasons, we vacate the decision of the court of appeals and affirm the district court's summary judgment dismissing this action with prejudice.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christensen, C.J., and Mansfield, McDermott, and May, JJ., join this opinion. McDonald, J., files an opinion concurring specially. Oxley, J., files an opinion concurring specially.

#22–0917, *Myers v. City of Cedar Falls*

**MCDONALD, Justice (concurring specially).**

Stare decisis is substantive law binding on this court just like any other body of law. *See Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45, 55 (Iowa 2024) (McDonald, J., concurring in part and dissenting in part) ("In Iowa, the doctrine of stare decisis is controlling substantive law and not just a policy preference, rule of thumb, or best practice."); *Youngblut v. Youngblut*, 945 N.W.2d 25, 44 (Iowa 2020) (McDonald, J., dissenting) (discussing stare decisis); *State v. Davis*, 944 N.W.2d 641, 651–52 (Iowa 2020) (McDonald, J., dissenting) (discussing stare decisis); Stephen E. Sachs, Dobbs *and the Originalists*, 47 Harv. J.L. & Pub. Pol'y (forthcoming 2024) (stating the original law of this country "includes enacted law, such as the Constitution, statutes, and treaties, but it also includes unwritten law," including "common-law doctrines of party presentation and of stare decisis"). Following the law of stare decisis, I would adhere to *Sanon v. City of Pella*, 865 N.W.2d 506 (Iowa 2015). Without overruling *Sanon*, I would affirm the judgment of the district court. The district court correctly held that there is no evidence in the summary judgment record showing the defendant knowingly violated any statute or administrative regulation. I thus concur in the court's judgment.

**OXLEY, Justice (concurring specially).**

This case can be decided without reaching the merits of *Sanon v. City of Pella*, 865 N.W.2d 506 (Iowa 2015). Principles of stare decisis and judicial restraint require that we do so. I disagree with the majority's decision to overrule *Sanon*. I would affirm the district court's conclusion that the City was entitled to summary judgment on this record, and I therefore concur in the judgment only.

**I. Stare Decisis Requires Adherence to *Sanon v. City of Pella.***

This is a case of statutory interpretation where the general assembly can fix something if we misconstrue a statute's meaning. Indeed, the *Sanon* dissent expressly "invite[d] the legislature to take a fresh look at the scope of tort immunity for municipal swimming pools in light of today's decision," *id.* at 518 (Waterman, J., concurring in part and dissenting in part), but the general assembly has declined to take up that invitation—despite having revised the immunity provisions of the municipal tort claims act several times since *Sanon*. *See, e.g.*, 2020 Iowa Acts ch. 1027, § 3 (codified at Iowa Code § 670.4(1)(*r*) (2021)) (adding a new provision related to emergency response equipment or vehicles donated to a municipality); 2019 Iowa Acts ch. 153, § 1 (codified at Iowa Code § 670.4(1)(*k*) (2020)) (amending § 670.4(1) to include nonprofit corporations delivering response services on behalf of a municipality to the protections provided by that provision); 2018 Iowa Acts ch. 1126, § 2 (codified at Iowa Code § 670.4(1)(*q*) (2019)) (adding a new provision governing honey beehives on municipal property). Given these legislative amendments, this case is an "especially" good candidate for adhering to stare decisis. *Bd. of Water Works Trs. v. SAC Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 61 (Iowa 2017) (quoting *In re Est. of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011)) ("The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous

decisions has been long acquiesced in by the legislature . . . .' " (omission in original) (quoting *Vajgrt*, 801 N.W.2d at 574)). If the general assembly disagreed with *Sanon*'s interpretation of section 135.38 to remove the immunity provided to municipal swimming pools for knowing violations of any department regulation, it could easily have fixed it in the last decade. But it hasn't. *See Vajgrt*, 801 N.W.2d at 574 (noting the legislature's repeated reenactment of a statute without disturbing the prior judicial interpretation was evidence affirming acquiescence); *see also State v. Montgomery*, 966 N.W.2d 641, 651 (Iowa 2021) (refusing to overrule a prior decision based, in part, on the reenactment rule, noting that "the legislature recently amended section 709.3, defining sexual abuse, and section 702.17, defining 'sex act,' without overruling *Pearson*").

This fact has led us on numerous occasions to declare that "interpretation of a statute . . . [is an] area[] where historically we have been most reluctant to disturb precedent." *Youngblut v. Youngblut*, 945 N.W.2d 25, 39 (Iowa 2020) (citing cases); *see also State v. Lee*, ___, N.W.3d ___, ___, 2024 WL 2096203, at *3 (Iowa May 10, 2024) ("We do not overturn our precedents lightly and will not do so absent a showing the prior decision was clearly erroneous." (quoting *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 83 (Iowa 2022))); *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 585 (Iowa 2017) ("We are adhering to our consistent prior interpretations of the Act since 1992—interpretations that have not been disturbed by the legislature—and the doctrine of stare decisis."). There is no stability in our law if it changes every time there is a shift on our court. *See Bd. of Water Works Trs.*, 890 N.W.2d at 60–61 ("Courts adhere to the holdings of past rulings to imbue the law with continuity and predictability and help maintain the stability essential to society." (quoting *State v. Miller*, 841 N.W.2d 583, 586 (Iowa 2014))). "If courts are viewed as unbound

by precedent, and the law as no more than what the last Court said, considerable efforts would be expended to get control of such an institution—with judicial independence and public confidence greatly weakened." *Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 975 N.W.2d 710, 751 (Iowa 2022) (Christensen, C.J., concurring in part and dissenting in part) (quoting Henry Paul Monaghan, *Stare Decisis and Constitutional Adjudication*, 88 Colum. L. Rev. 723, 753 (1988)).

I agree with Justice McDonald that stare decisis is a substantive legal doctrine that we cannot simply set aside. I write separately to explain why this case differs from our recent case of *Vaudt v. Wells Fargo Bank, N.A.*, 4 N.W.3d 45 (Iowa 2024), where he and I disagreed in our application of the doctrine. *See id.* at 55 (McDonald, J., concurring in part and dissenting in part).

Stare decisis is not an inexorable command that prior precedents can never be overruled. *See State v. Short*, 851 N.W.2d 474, 515 (Iowa 2014) (Waterman, J., dissenting) ("Although 'not an inexorable command,' *stare decisis* is a foundation stone of the rule of law, necessary to ensure that legal rules develop 'in a principled and intelligible fashion.' " (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014))). "For that reason, this Court has always held that 'any departure' from the doctrine 'demands special justification.' " *Id.* (quoting *Bay Mills*, 572 U.S. at 798). For example, in *McElroy v. State*, we overruled *Smith v. ADM Feed Corp.*, 456 N.W.2d 378 (Iowa 1990) (en banc), where we had held that a plaintiff bringing a claim under the Iowa Civil Rights Act (ICRA) did not have a statutory right to a jury trial. 703 N.W.2d 385, 395 (Iowa 2005); *see also Smith*, 456 N.W.2d at 380–82 (construing the ICRA, which was silent on the right to a jury trial). When asked to revisit that holding in *McElroy*, we concluded that "the majority's statutory analysis in *Smith* was fundamentally flawed" based on its misunderstanding that "the ICRA framework was

administrative in nature." 703 N.W.2d at 393. We further explained that experience putting the *Smith* holding into practice, coupled with changes in federal law, revealed the problems with that interpretation. *Id.* at 394–95 (recognizing the problems created when "plaintiffs bringing several different causes of action would have some of them tried by a jury, with others tried to the court" and noting that ICRA claims tried in federal court alongside Title VII claims, which were entitled to a jury trial, were tried to a jury despite our holding).

We recognized a similar problem with prior precedent in our recent decision of *Vaudt*, 4 N.W.3d 45 (majority opinion). *Vaudt* involved application of a special one-year statute of limitations related to claims arising "by reason of a transfer of an interest in real estate by a trustee" to a claim for a boundary by acquiescence. *Id.* at 50 (quoting Iowa Code § 614.14(5)(*b*)). We had previously held that the one-year limitations period applied to such claims in *Heer v. Thola*, 613 N.W.2d 658, 662–63 (Iowa 2000) (en banc). We overruled *Heer*, but only after concluding that that court's interpretation of section 614.14(5)(*b*) was "based on its [mis]understanding that establishing a boundary by acquiescence is not self-executing, such that 'judicial intervention is a requirement for establishing title by acquiescence.' " *Vaudt*, 4 N.W.3d at 51 (quoting *Heer*, 613 N.W.2d at 661). Rather, a boundary by acquiescence is self-executing, so the *Heer* court's underlying premise about that doctrine misguided its statutory construction analysis. *See id.* In addressing stare decisis, we explained that *Heer*'s holding relied on "reasoning that distorts the acquiescence doctrine." *Id.* at 54. Thus, *Heer*'s holding, left in place, spread that distortion of a different doctrine beyond its application to the statute at issue.

The same is not true here. The majority merely agrees with the *Sanon* dissent's interpretation of Iowa Code section 135.38 (2019) over that majority's

interpretation. But the only difference is in the competing views of how to apply the rules of statutory interpretation to that Code provision. The majority has identified no underlying misunderstanding of substantive law or actual problems (as opposed to the fabricated speculative issues far removed from the facts of the case before us that the majority creates to support a sense of urgency)[9] that flow from the *Sanon* majority's holding.

Stare decisis requires us to adhere to prior decisions we believe to be wrong. *See Kimble v. Marvel Ent., LLC,* 576 U.S. 446, 455–56 (2015) ("Indeed, *stare decisis* has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up."). Here, the district court did not rely on *Sanon,* although the court of appeals did in reversing the district court's summary judgment. I would vacate the court of appeals decision and affirm the district court's holding that even if a knowing violation of the administrative regulations was a criminal offense, Myers failed to present evidence that would allow a fact-finder to conclude that an employee of the City knowingly violated the relevant regulations.

**II. A Rule Violation Must Provide a Sufficiently Definite Standard Before a Municipal Employee Can Know He Is Committing a Criminal Offense.**

In *Sanon*, the City of Pella conceded that it failed to use the operable underwater lighting system, and its lifeguards admittedly could not see the drain that night because the water had become so murky. 865 N.W.2d at 509 & n.2

---

[9]The majority claims that every parent who disobeys an Iowa Department of Health and Human Services (HHS) caseworker's instruction "may have committed a crime," given the general assembly's recent merger of the Iowa Department of Public Health (IDPH) with the Iowa Department of Human Services (DHS), forming HHS. The majority's supposition sets up a straw man to justify its otherwise unjustified overruling of *Sanon*. To the extent they have any relevance, the legislative reorganization of the executive departments and accompanying significant statutory amendments to various provisions of chapters 135, 135I, and related chapters—without amending section 135.38—counsel us to leave *Sanon* alone. The effects of the numerous statutory changes must necessarily be left for another day when those issues are before us. They certainly do not support overruling *Sanon*.

(majority opinion). The only issue in *Sanon* was whether the conceded rule violations constituted a criminal offense, which turned on whether section 135.38 applied to rules promulgated under chapter 135I. *See id.* at 510–15. We did not address the separate question raised by the City in this case—whether a regulation can be knowingly violated when the regulation fails to provide a sufficiently objective standard against which to determine whether it has been violated.

The court of appeals essentially applied a strict liability standard—either the diving board was slip-resistant (and not in violation), or it was not (and in violation). But a violation of a regulation is criminal only if it is a knowing violation. *See* Iowa Code § 135.38 ("Any person who *knowingly violates* any . . . of the rules of the department . . . shall be guilty of a simple misdemeanor." (emphasis added)). "To act 'knowingly' has been defined to mean that a person acted voluntarily and intentionally, and not because of mistake or accident or other innocent reason." *Sahu v. Iowa Bd. of Med. Exam'rs*, 537 N.W.2d 674, 678 (Iowa 1995). We generally require objective standards in criminal statutes to give individuals sufficient notice that their conduct will subject them to criminal liability. *See, e.g., State v. Baker*, 688 N.W.2d 250, 255 (Iowa 2004) (holding that a penal statute must define criminal offenses "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" (quoting *State v. Hunter*, 550 N.W.2d 460, 463 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306 (Iowa 2000) (en banc))); *see also State v. Opperman*, 826 N.W.2d 131, 133 (Iowa Ct. App. 2012) ("It is a bedrock principle of the criminal justice system that, almost without exception, one is required to have some level of culpability before being subjected to criminal sanctions."). Thus, we require higher standards of certainty in statutes imposing criminal

penalties than in statutes enforced only by civil sanction. *See State v. Vick*, 205 N.W.2d 727, 730 (Iowa 1973). For criminal liability, "[t]here must be ascertainable standards of guilt." *Id.* (quoting *Winters v. New York*, 333 U.S. 507, 515 (1948)).

Myers is correct that there does not need to be a conviction or proof beyond a reasonable doubt that a City employee violated the regulations; he "need only prove by a preponderance of the evidence that a City employee or officer committed the criminal act causing injury." *Sanon*, 865 N.W.2d at 517. But he misplaces his reliance on civil cases allowing a jury to determine a defendant's civil liability involving "slippery" surfaces in negligence or premises liability actions. *See, e.g., Wieseler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 451 (Iowa 1995) (addressing whether plaintiff's evidence was sufficient to generate a jury question on whether the frost in defendant's parking lot created an unreasonable risk of harm); *Smith v. Cedar Rapids Country Club*, 124 N.W.2d 557, 563 (Iowa 1963) (holding that even though witnesses for the defense testified "that the floor was not slippery in that area, it must be concluded there was a jury question as to that issue"). He must still prove acts that amount to a criminal offense before immunity is abrogated under section 670.4(1)(*l*). *See Sanon*, 865 N.W.2d at 516 ("[W]e are satisfied the term 'criminal offense' refers to that conduct which is prohibited by statute and is *punishable* by fine or imprisonment." (quoting *In re Prop. Seized from Kaster*, 454 N.W.2d 876, 878 (Iowa 1990))). So even though a conviction is not required, the employee must have engaged in conduct that is punishable as a crime. *Id.*

The problem here is not, as Myers argues, whether sufficient circumstantial evidence establishes the employee's awareness or knowledge of the diving board's condition. The problem is identifying when the diving board's condition reaches the level of lacking slip-resistance to say that an employee

knew it amounted to a violation of the regulations. There cannot be a *knowing* violation of a rule without an established standard for enforcement. *See Kaster,* 454 N.W.2d at 878 ("[A] penal statute must satisfy two standards: (1) it must give a person of ordinary intelligence fair notice of what is prohibited, and (2) it must provide an explicit standard for those who apply it." (quoting *State v. Duncan,* 414 N.W.2d 91, 96 (Iowa 1987) (en banc))); *see also State v. Buchanan,* 549 N.W.2d 291, 294 (Iowa 1996) (defining "knowledge" as "a conscious awareness," and "[k]nowingly" as "a knowledge of the existence of the facts constituting the crime" (first quoting Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.3 (1995); then quoting *State v. Winders,* 366 N.W.2d 193, 195 (Iowa Ct. App. 1985) (en banc))).

For example, the administrative regulations related to visibility at issue in *Sanon* had sufficiently definite standards for determining compliance. *See* 865 N.W.2d at 508. Iowa Administrative Code rule 641—15.4(4)(*m*)(2)(1) requires lighting sufficient "so that all portions of the swimming pool, including the bottom and main drain, may be clearly seen." Similarly, Iowa Administrative Code rule 641—15.4(2)(*c*) mandates closure of a swimming pool deeper than eight feet "if the main drain is not clearly visible from the deck." "Clearly seen" and "clearly visible" provide objective standards for determining compliance with these rules, as demonstrated by use of similar terms in other criminal statutes. *See, e.g.,* Iowa Code § 321.303 (prohibiting drivers from passing vehicles going the same direction "unless the left side is clearly visible and is free of oncoming traffic"); Iowa Code § 321.388 (requiring rear vehicle lamps to illuminate registration plates and render them "clearly legible from a distance of fifty feet"). These penal provisions demonstrate that "clear visibility" is a well-recognized standard utilized by courts making factual determinations in a penal setting that puts individuals on notice of prohibited conduct. *See State v. Sullivan,* 298

N.W.2d 267, 271 (Iowa 1980) (looking to similar statutes to give definiteness to a statute).

This stands in stark contrast to the regulations at issue in this case. Diving boards are required to have a "slip-resistant surface." Iowa Admin. Code rs. 641—15.4(4)(*c*)(6), 641—15.5(13)(*a*)(5). In some industries, slip resistance is measured. As Myers' expert, Tom Griffiths, alluded to,[10] some industries define levels of slip resistance based on a surface's coefficient of friction, setting specific acceptable standards. *See, e.g., Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) ("Evidence concerning a surface's COF [(coefficient of friction)] is generally presented through the testimony of an expert witness, who opines on the appropriate COF industry standard and on whether the surface in question meets that standard."); *id.* at 1280 ("According to Dr. Zollo, the American Society for Testing and Materials (ASTM), the Occupational Safety and Health Administration (OSHA), the Federal Register, and the Hospital Research Bureau set the minimum COF value for passenger walkways at 0.50."). But as Griffiths also explained, there is no such measurable level for diving boards in the swimming pool industry—certainly not on the record presented to the district court in considering whether to grant summary judgment. Rather, according to Griffiths, the industry standard is the "barefoot test"—take your shoes and socks off and see if the surface is slippery. In response to the question of whether there is a measurement for determining when a diving board is no longer slip-resistant, Griffiths responded:

> No; no, you're not missing anything. That's the frustrating thing about what we do. We depend upon reasonably prudent facility

---

[10]In his deposition, Griffiths explained: "There is coefficiency of friction numbers, very objective numbers that different industries subscribe or prescribe for surfaces. Now, particularly in a wet environment they are not as reliable, and I've read many opinions before. The true test of nonslip surfaces, particularly in a water environment, in an aquatic environment is the barefoot test as opposed to the . . . coefficiency of friction."

managers to maintain their boards so that it's nonslip. We -- It's difficult -- The industry doesn't address some of these areas objectively in black and white numbers. It is incumbent upon the facility manager to get a bucket of water, throw it on the surface -- whether it be a locker room floor or a diving board, throw a bucket of water on that surface, take their shoes and socks off and see if -- see if it's slippery; I mean, that is ultimately the best way to do it, and that's the way we have been doing it for decades.

This is consistent with testimony from The Falls Aquatic Center's recreation supervisor, Chris Schoentag, that he used his "best judgment" to test a diving board's slip resistance because he was unaware of any method for testing or determining the sufficiency of the board's surface friction.

A violation of a regulation cannot be knowing without some sufficiently definite standard against which to measure the employee's conduct. As presented to the district court on summary judgment here, the term "slip resistant"—which Griffiths measures using only the "barefoot test"—does not pass that test. The department had just given the pool a clean inspection report. Schoentag testified that in his "best judgment," the diving board was slip-resistant. The Cedar Falls recreation and community programs manager, Bruce Verink, who oversaw Schoentag's removal and reinstallation of the diving boards, testified that he examined the board when it was installed at the beginning of the summer to determine whether it had "enough grit to hold the feet and keep them from sliding on the board," and concluded it did. Myers presented no contradictory evidence about the City's knowledge that the board's surface was not slip-resistant. Sending this case to a jury to allow it to apply its own standard of "slipperiness," as Myers proposes, would impermissibly allow the jury to resolve "on an ad hoc and subjective basis," *Baker*, 688 N.W.2d at 255 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972)), whether the City's employees engaged in criminal conduct.

Even if administrative rule violations can constitute a simple misdemeanor under Iowa Code section 135.38, neither the regulations' requirements for slip-resistant surfaces on diving boards nor Griffiths' opinion provided sufficient guidance on how that is measured. Absent such a standard—and coupled with the recent Black Hawk Health Department clean inspection report and Schoentag's and Verink's testimony that they believed the diving board was slip-resistant—Myers failed to present evidence from which a jury could find that a city employee knowingly violated the regulations, i.e., committed a criminal offense. Therefore, the district court properly granted summary judgment to the City based on the immunity provided under Iowa Code section 670.4(1)(*l*).